UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOYCE ROSELY,<br><br>Plaintiff,<br><br>v.<br><br>STRIVE ASSET MANAGEMENT LLC, ANSON FRERICKS, and VIVEK RAMASWAMY,<br><br>Defendants. | Civil Action No. 2:23-cv-20772-JXN-CLW<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Motion Return Date: February 5, 2024 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER TO THE SOUTHERN DISTRICT OF OHIO OR, IN THE ALTERNATIVE, TO DISMISS**

ELLIS GEORGE CIPOLLONE O'BRIEN LLP
1155 F Street, NW, Suite 750
Washington, DC 20004
Telephone: (202) 249-6900
Facsimile: (202) 249-6899

ELLIS GEORGE CIPOLLONE O'BRIEN LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
bkatz@egcfirm.com

*Attorneys for Defendants*

*Of Counsel*:
John V. Coghlan, Esq.
Brett D. Katz, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... iii

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 3

I. Ms. Rosely Is Hired By Strive And Signs An Employment Agreement. .......... 3

II. Ms. Rosely Allegedly Makes Undated And Unspecified Complaints About Purported Securities Law Violations. .......... 4

III. Ms. Rosely Allegedly Makes Complaints About The Purported Harassment Of Another Employee. .......... 5

IV. Ms. Rosely Is Terminated. .......... 6

LEGAL ARGUMENT .......... 6

I. The Court Should Transfer The Case To The Southern District Of Ohio Because Ms. Rosely Agreed That All Claims Relating To Her Employment Must Be Brought In An Ohio Court. .......... 6

  A. The Forum-Selection Clause in Ms. Rosely's Employment Agreement Is Governed By Ohio Law. .......... 8

  B. Under Ohio Law, The Forum-Selection Clause Encompasses Ms. Rosely's Claims. .......... 10

  C. No "Unusual Circumstances" Exist That Would Weigh Against Transfer. .......... 13

II. In The Alternative, The Complaint Should Be Dismissed As It Fails To State Claims Under CEPA Or NJLAD .......... 15

  A. Ms. Rosely Fails To State CEPA Or NJLAD Retaliation Claims Because The Complaint Lacks Factual Allegations Suggesting Her Termination Was Caused By Her Complaints. .......... 16

  B. Ms. Rosely Fails To State An NJLAD Claim For Age Discrimination Because She Fails To Allege Facts Showing Her Termination Was Because Of Age. .......... 18

  C. Ms. Rosely Fails To State An NJLAD Or CEPA Claim For Individual Liability Against Defendant Ramaswamy Because The Complaint Makes Only A Conclusory Allegation That He Participated In The Alleged Unlawful Conduct. .......... 20

**TABLE OF CONTENTS**
**(Continued)**

Page

CONCLUSION........................................................................................................................22

## TABLE OF AUTHORITIES


CASES Page(s)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....15, 16

*Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013) .....7, 13, 15

*Bergen Com. Bank v. Sisler*, 157 N.J. 188 (1999) .....2, 19

*Blakney v. City of Phila.*, 559 F. App'x. 183 (3d Cir. 2014) .....17

*Bohl v. Hauke*, 906 N.E.2d 450 (Ohio App. 4th Dist. 2009) .....11, 12

*Breslow v. Klein*, No. CV 17-6912, 2018 WL 3031854 (D.N.J. June 19, 2018) .....10

*CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801 (N.D. Ohio 2021) .....12

*Caver v. City of Trenton*, 420 F.3d 243 (3d Cir. 2005) .....16

*Cohan v. Acme Lift Co. L.L.C.*, No. CV 20-11075 (CCC), 2021 WL 1625098 (D.N.J. Apr. 27, 2021) .....10, 13

*Collins on behalf of Herself v. Mary Kay, Inc.*, 874 F.3d 176 (3d Cir. 2017) .....8, 9, 10

*Escanio v. United Parcel Serv.*, 538 Fed.Appx. 195 (3d Cir. 2013) .....18

*Goodman v. London Metals Exch., Inc.*, 429 A.2d 341 (N.J. 1981) .....10

*Gould v. Wetzel*, 547 Fed. Appx. 129 (3d Cir. 2013) .....15

*Gutwirth v. Woodford Cedar Run Wildlife Refuge*, 38 F. Supp. 3d 485 (D.N.J. 2014) .....15, 16

*Hassell v. Johnson & Johnson*, No. 13-CV-4109 JAP, 2014 WL 1744266 (D.N.J. May 1, 2014) .....16

*In re: Howmedica Osteonics Corp*, 867 F.3d 390 (3d Cir. 2017) .....7, 14, 15

*Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124 (N.J. 1992) .....8

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) .....14, 15

*Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173 (3d Cir. 1997) .....16

*Kolb v. Burns*, 727 A.2d 525 (N.J. Super. App. Div. 1999) .....16

*Malloy v. Intercall, Inc.*, No. CIV.A. 08-01182-JLL, 2010 WL 5441658 (D.N.J. Dec. 28, 2010) .....20

**TABLE OF AUTHORITIES**
**(Continued)**

CASES Page(s)

*Marcinczyk v. State of New Jersey Police Training Comm'n*, 5 A.3d 785 (N.J. 2010) ................10

*Masco Cabinetry Middlefield, LLC v. Cefla N. Am., Inc.*, 637 F. App'x 192 (6th Cir. 2015) ......12

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..........................................................16

*McKenna v. Verint Americas Inc.*, No. CV 22-02370 (FLW), 2022 WL 3211422 (D.N.J. Aug. 9, 2022)..........................................................................................................21

*Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296 (3d Cir. 2004)...............................................18, 19

*Moore v. City of Phila.,* 461 F.3d 331 (3d Cir.2006)...........................................................16

*Nahaczewski v. Buck Glob., LLC*, No. CV201241 (SDW) (LDW), 2022 WL 2952952 (D.N.J. July 26, 2022)..........................................................................................................19

*Orthopaedic & Spine Ctr., LLC v. Henry*, No. 2:16-CV-0893, 2017 WL 6035234 (S.D. Ohio Dec. 6, 2017) ..........................................................................................................12

*Peck v. Jayco, Inc.*, No. CV 22-5762, 2023 WL 2706806 (D.N.J. Mar. 30, 2023).......................14

*Polansky v. Forest River, Inc.*, No. 2:22-cv-4460, 2023 WL 5486259 (S.D. Ohio Aug. 24, 2023)..........................................................................................................13

*Reganato v. Appliance Replacement Inc.*, No. CV 15-6164 (RMB/JS), 2017 WL 747463 (D.N.J. Feb. 27, 2017), *aff'd*, 727 F. App'x 40 (3d Cir. 2018)................................................18

*Rockware v. ETZ Hayim Holding, Inc.*, No. CV204389MASDEA, 2020 WL 7640917 (D.N.J. Dec. 23, 2020) ..........................................................................................................8

*Sgro v. Bloomberg L.P.*, 331 F. App'x 932 (3d Cir. 2009)..........................................................18

*Spence v. Foxx*, 159 F. Supp. 3d 483 (D.N.J. 2014) ..........................................................16

*Stamos v. AoP Operating Co., LLP*, No. CV201676 (MAS) (TJB), 2022 WL 5103135 (D.N.J. Oct. 4, 2022)..........................................................................................................20

*Stone v. N.J. Admin. Office of the Courts*, 557 Fed.Appx. 151 (3d Cir. 2014)...........................15

*Tarr v. Ciasulli*, 181 N.J. 70 (2004)..........................................................................................20

*Taylor v. Lincare, Inc.*, No. CV 15-6284 (RMB/JS), 2016 WL 3849852 (D.N.J. July 15, 2016)..........................................................................................................18

**TABLE OF AUTHORITIES**
**(Continued)**

CASES Page(s)

*Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003) ....................2, 17

*Thomasian v. New Jersey Inst. of Tech.*, No. CIV. 08-2218 (FSH), 2010 WL 1032653 (D.N.J. Mar. 16, 2010)....................19

*Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831 (3d Cir. 2016)....................16

*Travelers Prop. Cas. Co. of Am. v. Centimark, Corp.*, No. 2:04-CV-0916, 2005 WL 1038842 (S.D. Ohio May 3, 2005) ....................11, 12, 13

*Varsity Gold, Inc. v. Koone*, No. 3:08 CV 528, 2009 WL 10690075 (N.D. Ohio Jan. 20, 2009)....................13

*Watson v. Rozum*, 834 F.3d 417 (3d Cir. 2016)....................17

*Young v. Hobart W. Grp.*, 385 N.J. Super. 448 (App. Div. 2005)....................2, 19

**STATUTES**

28 U.S.C. § 1404(a) ....................1, 6, 7, 14

N.J. Stat. Ann. § 34:19-5....................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)....................1, 15

Restatement (Second) of Conflicts of Laws § 187 ....................8

Defendants Strive Asset Management, Anson Frericks, and Vivek Ramaswamy (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to transfer this case to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a) and in accordance with the forum-selection clause set forth in plaintiff Joyce Rosely's Employment Agreement or, in the alternative, to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Joyce Rosely ("Ms. Rosely") was employed by defendant Strive Asset Management ("Strive") pursuant to an employment agreement which expressly provided that it "may hereunder be terminated by either the Company or the Employee at any time and for any reason" with appropriate notice. Because Ms. Rosely failed to meet performance expectations, she was properly terminated by Strive only seven months after being hired, along with a group of other underperforming employees, as part of an internal reorganization at the start-up. She now claims that she was unlawfully terminated in retaliation for complaining about alleged misconduct by her former colleagues, or (in the alternative) because of her age. She is wrong on both counts. For the separate and independent reasons stated herein, under the law, this Court should not let her case proceed. Instead, the Court should either (i) transfer her case to the Southern District of Ohio pursuant to the choice-of-venue provision in her employment agreement, or (ii) dismiss her case outright.

The Court should transfer Ms. Rosely's case because she has brought suit in the wrong venue. Her employment agreement contains a choice-of-law clause making clear that any actions to enforce it, including a claim of wrongful termination, must be brought in a court of competent jurisdiction in Ohio. Applying Ohio law (as New Jersey's choice-of-law rules mandate), courts routinely find that forum-selection clauses should be interpreted broadly and should be binding on

the parties. As a result, those clauses cover even non-contractual claims that are sufficiently related to the contract containing the provision. Such is the case here. This Court should transfer this matter to the Southern District of Ohio.

In the alternative, the Court can and should dismiss the action for failure to state a claim. None of Ms. Rosely's claims are supported by the allegations in the Complaint. Ms. Rosely's CEPA and NJLAD retaliation claims must be dismissed because the Complaint fails to plead facts linking her termination to any alleged protected activity. Instead, the Complaint simply alleges, in conclusory fashion, that she engaged in a protected activity and—at least two months later—she was terminated. But temporal proximity is not enough to plead causation here. Courts in this Circuit have found that a causal link can be drawn only where the time between the alleged protected activity and retaliatory action is unusually close. As a result, they have found causation to be lacking where the time between the alleged protected activity and retaliatory action is substantially *less* than the two months alleged here. *See, e.g.*, *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three weeks between protected activity and termination found to be insufficient to support a claim).

Nor can Ms. Rosely's allegations in support of her age discrimination claim support a finding of liability. Specifically, Ms. Rosely fails to allege that she was replaced by a sufficiently younger employee, an element which the New Jersey Supreme Court has found necessary "to permit an inference of age discrimination." *Bergen Com. Bank v. Sisler*, 157 N.J. 188, 213 (1999). Her claim is further subject to dismissal because she was both hired and fired while she was a member of the protected class—indeed, she was not even with the company for a full year. *See Young v. Hobart W. Grp.*, 385 N.J. Super. 448, 461 (App. Div. 2005) ("Courts have rejected age

discrimination claims when a plaintiff was both hired and fired while a member of the protected age group.").

Finally, Ms. Rosely's retaliation claims against defendant Vivek Ramaswamy ("Mr. Ramaswamy"). In addition to the reasons stated above, Mr. Ramaswamy should be dismissed for the separate reason that he was no longer involved in Strive's day-to-day activities at the time Ms. Rosely was fired. Ms. Rosely tries to argue that two *post*-termination events show that he was involved in the decision to end her employment. First, she alleges that Mr. Ramaswamy visited Strive's office the day after she and others were terminated to assure employees, "*we* had to do this." Compl. ¶ 19. Second, she alleges that Mr. Ramaswamy visited the office again approximately two weeks after she was terminated in order to announce the appointment of Strive's new CEO. Ms. Rosely concludes that these two office visits by the co-founder of the start-up "demonstrat[e] that [he] remain[ed] involved in the day-to-day decisions regarding who manages defendant Strive." *Id.* These allegations are insufficient to maintain a claim for personal liability under CEPA and LAD.

For these reasons, the Court should transfer the matter to the Southern District of Ohio or, in the alternative, dismiss the Complaint.

## BACKGROUND

### I. Ms. Rosely Is Hired By Strive And Signs An Employment Agreement.

Ms. Rosely was employed and compensated by Strive for a period of seven months. Compl. ¶¶ 5, 14.[1] She began work for Strive on or about August 2, 2023, *See* Compl. ¶ 5*,* when she signed and executed an agreement governing the terms of her employment (the "Employment

[1] Accompanying this Memorandum of Law is the Declaration of John V. Coghlan, Esq., dated January 9, 2024 (the "Coghlan Declaration") and the exhibits thereto. The Complaint, ECF No. 1-1 (the "Complaint"), is annexed to the Coghlan Declaration as Exhibit 1.

Agreement”). Coghlan Decl. Ex. 2. Notably, the Employment Agreement provides that her “employment hereunder may be terminated by either the Company or the Employee at any time and for any reason” with thirty-days’ notice. *Id.* § 4. Consistent with the fact that Strive is an Ohio corporation and based in Dublin, Ohio, the Employment Agreement also contains a choice-of-law provision that provides, “This Agreement, *for all purposes*, will be construed in accordance with the laws of the State of Ohio without regard to conflicts of law principles.” *Id.* § 11.5 (emphasis added). Further, it contains a forum-selection clause that states:

> [a]ny action or proceeding by either of the parties to enforce this Agreement must be brought only in a state or federal court located in the State of Ohio. The parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

*Id.*

## II. Ms. Rosely Allegedly Makes Undated And Unspecified Complaints About Purported Securities Law Violations.[2]

Ms. Rosely alleges that, upon commencing her employment at Strive, she began to receive “demands from defendants Anson Frericks (“Frericks”) and Vivek Ramaswamy (“Ramaswamy”),” including:

> (1) directions to utilize non-compliant sales material that improperly promised future investment returns, (2) instructions to new employees to engage in sales activities before those employees’ securities licenses had been transferred to defendant Strive, (3) pressure to send out sales material before those documents had been approved by the company’s outside compliance vendor, Foreside, (4) orders to have non-registered employees discuss defendant Strive’s securities products with potential clients over the telephone, and (5) insistence on creating deal books and soliciting

[2] Defendants deny the allegations in the Complaint. However, solely for purposes of the portion of the motion that seeks dismissal of the Complaint, the facts alleged thereby are accepted as true.

> business on investment products before those products were registered and actively traded.

*Id.* ¶ 8. Other than these general descriptions, Ms. Rosely offers no detail or specific allegations about the purported "demands." She does not allege *when* these conversations occurred or how frequently. She does not identify the securities laws she believed were being violated. Nor does she allege that any of the instructions were specifically made to her by Defendants Frericks or Ramaswamy.

Ms. Rosely also contends that Defendant Frericks "unlawfully engaged in securities sales activities" without a license because he "called and e-mailed individual investors," and that Defendant Ramaswamy "unlawfully engaged in securities sales activity on Twitter." Compl. ¶ 9. Once again, she provides no specifics regarding these allegations. Ms. Rosely does not explain the purported unlawful conduct engaged in by Defendants Frericks and Ramaswamy, nor does she indicate when it happened, when she became aware of it, or even what was said.

Ms. Rosely generally alleges that she and her co-employee, Jeff Nye, "repeatedly objected to the foregoing unlawful conduct in conversations with defendants Frericks and Ramaswamy." Compl. ¶ 9. Again, she provides no details regarding these conversations, including when they happened or what was said.

## III. Ms. Rosely Allegedly Makes Complaints About The Purported Harassment Of Another Employee.

Ms. Rosely also alleges that, "[i]n or around January 2023," she heard from her co-worker that a new employee was being pursued romantically by Strive's Chief Operating Officer, Ben Pham, in an "aggressive manner." Compl. ¶ 10. Ms. Rosely allegedly proceeded to meet with Strive's Head of Human Resources to "express[ ] concern that Pham's conduct was creating potential legal liability for defendant Strive." *Id.* ¶ 11. Ms. Rosely also allegedly informed Strive's Head of Human Resources that she had traveled with the individuals purportedly involved

in the inappropriate conduct and had found the interactions between the two of them to be "very uncomfortable to observe." *Id.* According to the Complaint, Strive's Head of Human Resources assured Ms. Rosely that she would "keep an eye on them and report back." *Id.* Ms. Rosely also claims that, when she informed Defendant Frericks of the purported relationship, he allegedly responded that "it was none of his business." *Id.* ¶ 12. Similarly, she claims that when she confronted Mr. Pham directly, he "told Ms. Rosely to mind her own business." *Id.* ¶ 13. In none of these instances does Ms. Rosely specifically indicate when or how she made any of her complaints, but she does suggest that she made them sometime in January 2023. *Id.* ¶ 22.

## IV. <u>Ms. Rosely Is Terminated.</u>

On or about March 21, 2023, *less than a year after she was hired*, Ms. Rosely was terminated. *Id.* ¶ 14. Ms. Rosely alleges that she was informed in a meeting with Defendant Frericks and Strive's Head of Human Resources that she was being terminated because the company was reorganizing and that there was no longer a position for her. *Id.* Consistent with this effort to reorganize, three other employees of Strive were also let go on the same date. *Id.* ¶ 15. Specifically, Strive terminated two Senior Vice Presidents and Regional Sales Directors, as well as Strive's Executive Vice President and Head of Wealth Management Distribution. *Id.* ¶¶ 9, 15. At the time of her termination, Ms. Rosely was 52 years old. *Id.* ¶ 16. The other terminated employees were 54, 53, and 40. *Id.* ¶¶ 16–17.

# <u>LEGAL ARGUMENT</u>

## I. <u>The Court Should Transfer The Case To The Southern District Of Ohio Because Ms. Rosely Agreed That All Claims Relating To Her Employment Must Be Brought In An Ohio Court.</u>

The Court should transfer Ms. Rosely's action to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a) because, in her Employment Agreement, Ms. Rosely agreed to a forum-selection clause requiring that claims relating to her employment be

brought in federal or state court in Ohio. The Southern District of Ohio is most appropriate, given the location of Defendants and the relevant witnesses and documents that will likely be at issue in the litigation.

While a normal § 1404(a) motion requires a district court to "evaluate both the convenience of the parties and various public-interest considerations," that calculus changes "when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (citation omitted). Where such a clause exists, the transfer analysis changes in three ways: (i) "the plaintiff's choice of forum merits no weight," (ii) "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests … [and] may consider arguments about public-interest factors only," and (iii) "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* at 64. The United States Supreme Court noted that, in light of its decision, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.*; *see also In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) ("[W]ith these modifications to the typical § 1404(a) analysis, district courts should enforce valid forum-selection clauses '[i]n all but the most unusual cases.'") (quotation omitted).

Here, the forum-selection clause in Ms. Rosely's employment agreement governs and requires transfer. That clause must be interpreted based on principles of Ohio law, which the Employment Agreement acknowledges control the interpretation of the contract, and Ohio courts have interpreted substantially identical forum-selection clause language to encompass any claims related to one's employment. And, no "unusual circumstances" exist that would weigh against transfer.

**A. The Forum-Selection Clause in Ms. Rosely's Employment Agreement Is Governed By Ohio Law.**

When Ms. Rosely signed her employment agreement, she acknowledged that "[t]his Agreement, for all purposes, will be construed in accordance with the laws of the State of Ohio without regard to conflicts of law principles." *See* Coghlan Decl. Ex. 2. In cases like this one, courts "look to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause." *Collins on behalf of Herself v. Mary Kay, Inc.*, 874 F.3d 176, 183–84 (3d Cir. 2017).

Here, "New Jersey choice-of-law rules provide that '[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.'" *Id.* (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)); *see also Rockware v. ETZ Hayim Holding, Inc.*, No. CV204389MASDEA, 2020 WL 7640917, at *3 (D.N.J. Dec. 23, 2020) (rejecting plaintiff's argument "that New Jersey law be applied to determin[e] the enforceability of the arbitration provision at issue" because "[e]ven when considering NJLAD employment claims, New Jersey courts generally construe an arbitration clause within an applicable employment agreement in accordance with any choice of law provision contained therein."). The default rule in favor of the parties' chosen law may only be set aside if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Instructional Sys.*, 614 A.2d at 133 (quoting Restatement (Second) of Conflicts of Laws § 187).

The Third Circuit's decision in *Collins* is on all fours with this case and makes clear that Ohio law governs interpretation of the forum-selection clause in Ms. Rosely's employment agreement. At issue in *Collins*, as here, was an agreement governing the employment relationship between Collins, an independent contractor, working in New Jersey for Mary Kay, Inc., a Texas-based company. *Collins*, 874 F.3d at 179. That agreement contained both a choice-of-law provision indicating that the agreement would be "governed by the laws of the State of Texas" and a forum-selection clause indicating that disputes or controversies relating to the agreement must be brought in Texas. *Id.* The court ruled that "the law specified in the Agreements—Texas law—should control the interpretation of the forum selection clause" because "Collins has not demonstrated that either of the two exceptions outlined in Restatement § 187(2) should apply." *Id.* at 184. In so ruling, it noted both (i) that "[t]here is no dispute that the parties have a substantial relationship to the state of Texas," and (ii) that Collins could not show "why New Jersey has a 'materially greater interest' in the application of its own contract law to the interpretation of the forum selection clauses, or how the application of Texas contract law to interpret the scope of the forum selection clauses would offend the 'fundamental policy' of New Jersey." *Id.*

The same reasoning applies here. The parties' choice of law—Ohio—governs the interpretation of their contract because neither of the exceptions identified in the Restatement apply. Ohio bears a substantial relationship to the parties here as it is the place where Strive has its principal place of business. The bulk of its employees, including all of Ms. Rosely's supervisors identified in her Complaint, reside and work in Ohio. And, Ms. Rosely cannot show that New Jersey "has a 'materially greater interest' in the application of its own contract law," or how the application of Ohio law to interpret the scope of the forum-selection clause would offend the "fundamental policy" of New Jersey. *Id.* To the contrary, "[a] basic tenet of [New Jersey] law is

the doctrine of freedom of contract." *Marcinczyk v. State of New Jersey Police Training Comm'n*, 5 A.3d 785, 788 (N.J. 2010); *see also Breslow v. Klein*, No. CV 17-6912, 2018 WL 3031854, at *8 (D.N.J. June 19, 2018) (following *Collins* and New Jersey choice of law in choosing to "apply Delaware law in interpreting the forum selection clause in the [Agreement]").

Nor does any public policy underlying Ms. Rosely's legal claims impact the choice-of-law analysis. As the Court explained in *Collins,* "the 'particular issue' of concern is not whether the choice-of-law clause should apply to Collins' underlying wage claim, but whether it applies to the interpretation of the forum selection clause." *Collins*, 874 F.3d at 185. *See also Cohan v. Acme Lift Co. L.L.C.*, No. CV 20-11075 (CCC), 2021 WL 1625098, at *5 (D.N.J. Apr. 27, 2021) ("As to the enforceability of the forum selection clause, Plaintiff attempts to argue that New Jersey public policy somehow exempts discrimination claims from forum selection clauses. However, there is no authority for this assertion.").

Under *Collins*, and consistent with the parties' intention, the forum-selection clause in Ms. Rosely's employment agreement must be interpreted under Ohio law.

### B. Under Ohio Law, The Forum-Selection Clause Encompasses Ms. Rosely's Claims.

Under Ohio law, Ms. Rosely's claims here easily fall within the ambit of the forum-selection clause. That clause explains, "[a]ny action or proceeding by either of the parties to enforce this Agreement must be brought only in a state or federal court located in the State of Ohio." Coghlan Decl. Ex. 2. Ms. Rosely seeks compensatory damages relating to her termination. Compl. at 7 (Prayer for Relief). But such damages would necessarily incorporate the amounts owed to her pursuant to her employment agreement. *See, e.g.*, N.J. Stat. Ann. § 34:19-5 (recognizing that a successful CEPA plaintiff may recover "compensation for all lost wages, benefits and other remuneration"); *see also Goodman v. London Metals Exch., Inc.*, 429 A.2d 341,

349 (N.J. 1981) ("When a wrongful discharge of an employee occurs the measure of damages is usually the employee's salary for the remainder of the employment period."). In other words, Ms. Rosely's suit seeks to enforce the employment agreement by granting her the benefits of it.

Numerous Ohio courts have found forum-selection language like that in Ms. Rosely's Agreement to encompass claims like those she raises here, even if those claims are not purely contractual in nature. In *Bohl v. Hauke*, 906 N.E.2d 450 (Ohio App. 4th Dist. 2009), the Court of Appeals of Ohio, Fourth District, enforced a forum-selection clause, stating that "[t]he laws of the State of Texas shall govern the rights and duties of the parties under this agreement and jurisdiction and venue is fixed in Harris County, Texas." *Id.* at 530, 535. Plaintiffs argued that the trial court improperly dismissed their non-contractual claims based on the terms of the forum-selection clause. Rejecting their view, the court explained that "'[i]f forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims," and "[t]herefore, 'even where a forum selection clause does not explicitly govern a given cause of action, courts will inquire into whether the other claims are sufficiently related to the claim that is specifically covered by the clause.'" *Id.* at 457 (quoting *Travelers Prop. Cas. Co. of Am. v. Centimark, Corp.*, No. 2:04-CV-0916, 2005 WL 1038842, at *2 (S.D. Ohio May 3, 2005)).

In *Travelers*, relied on by the *Bohl* court, a forum-selection clause was found to cover not only plaintiff's breach of warranty claim but also a negligence and breach of contract claim. *Travelers*, 2005 WL 1038842 at *2. In finding that "the negligence and breach of contract claims are closely related to the breach of warranty claim," the court pointed to the fact that "[p]roof of the alleged deficiency will require the same evidence," and that "the same witnesses will likely be called to show defective workmanship and a lack of reasonable care." *Id.* It further observed that

"[t]he parties agreed to a particular forum and should have been on notice that issues regarding the warranty, deficient workmanship, and resultant damages would be litigated in that particular forum." *Id.* at *3. For these reasons, it concluded that "all of Travelers' claims are covered by the forum selection clause." *Id.*

In *Orthopaedic & Spine Ctr., LLC v. Henry*, No. 2:16-CV-0893, 2017 WL 6035234, at *6 (S.D. Ohio Dec. 6, 2017) the court found that a forum-selection clause encompassing plaintiff's claim for breach of his employment contract also encompassed his "extra-contractual claims" because they "all involve the same factual and legal issues as OSC's breach of contract claim." *Id.* Relying on *Travelers*, the court observed that "[a]lthough the forum selection clause may appear on its face to be limited to the 'interpret[ation] and enforce[ment]' of Henry's employment agreement, public policy requires that forum-selection clauses be given a broad reading." *Id.* at *5 (citing *Travelers*, 2005 WL 1038842 at *2).[3] Of course, the language contained in Ms. Rosely's forum selection clause—relating to any action to "enforce" her employment agreement—is nearly identical to that in *Orthopaedic & Spine Center.*

Ms. Rosely may try to argue that her failure to assert a breach of contract claim distinguishes her case from those mentioned above. But that argument would run counter to the policy underlying all of them: forum-selection clauses may "not be defeated by artful pleading of claims." *Bohl*, 906 N.E. 2d at 457. *See also Masco Cabinetry Middlefield, LLC v. Cefla N. Am., Inc.*, 637 F. App'x 192, 195 (6th Cir. 2015) (citing *Bohl* for the proposition that "where a claim is sufficiently related to subject matter of the contract, the contractual forum-selection clause cannot

---

[3] Analogously, "[t]he Sixth Circuit has held repeatedly that contractual choice of law provisions apply to tort claims that are closely related to the contractual relationship, as opposed to those that are only tangentially related." *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801, 805 (N.D. Ohio 2021) (collecting cases).

be defeated simply by artfully pleading a claim not explicitly governed by the clause"). Thus, in *Polansky v. Forest River, Inc.*, No. 2:22-cv-4460, 2023 WL 5486259 (S.D. Ohio Aug. 24, 2023), the court rejected plaintiffs' argument that the forum-selection clause did not cover the specific claims raised in the lawsuit. In doing so, it explained that "public policy supports a broad reading of a forum selection clause . . . [a]nd courts routinely reject attempts to circumvent such a clause via artful pleading." *Id.* at *5 (citing *Travelers*, 2005 WL 1038842 at *2). Similarly, in *Varsity Gold, Inc. v. Koone*, No. 3:08 CV 528, 2009 WL 10690075 (N.D. Ohio Jan. 20, 2009), the court found plaintiff's argument "that the forum selection clause does not apply to its claims because they sound in tort, not contract" to be "without merit." *Id.* at *5. As the court explained, "Plaintiff's tort claims clearly relate to the SRA [Sales Representative Agreement], and the mere fact that Plaintiff's claims as alleged do not technically sound in contract does not take them without the scope of the SRA's forum selection clause." *Id.*

### C. <u>No "Unusual Circumstances" Exist That Would Weigh Against Transfer.</u>

As the Supreme Court has instructed, "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 59–60 (internal quotation omitted); *see also Cohan v. Acme Lift Co. L.L.C.*, No. CV 20-11075 (CCC), 2021 WL 1625098, at *6 (D.N.J. Apr. 27, 2021) ("Atlantic Marine compels transfer of this case to Arizona. The public factors are rarely—if ever—enough to overcome transfer. And they are not particularly close in this case.").[4]

[4] The Supreme Court explained that "a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests" because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atlantic Marine*, 571 U.S. at 64.

No unusual public interests are present here that would overcome the strong presumption in favor of transfer. The Third Circuit has recognized that the potential public interests to consider in a § 1404(a) analysis include "the enforceability of the judgment," "the relative administrative difficulty in the two fora resulting from court congestion," "the local interest in deciding local controversies at home," "the public policies of the fora," and "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).[5]

Here, "'[t]he enforceability of the judgment' and the 'public policies of the fora,' . . . support both courts' jurisdiction, for 'it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other," and "New Jersey lack[s] any public policy against enforcing forum-selection clauses." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 410 (3d Cir. 2017) (quoting *Jumara*, 55 F.3d at 879). The relative court congestion of the two forums weighs in favor of transfer. Indeed, as of the latest reports, there are 78,847 pending cases in the District of New Jersey versus 24,392 in the Southern District of Ohio. *See United States District Courts – National Judicial Caseload Profile*, U.S. COURTS, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf (last visited Jan. 3, 2024); *see also Peck v. Jayco, Inc.*, No. CV 22-5762 (RBK/SAK), 2023 WL 2706806, at *4 (D.N.J. Mar. 30, 2023). ("The third factor supports transfer due to the great congestion this Court currently faces."). The interest of New Jersey in deciding a local controversy is neutral. *Id.* ("The fourth factor is neutral because, although New Jersey may have an interest in resolving a

---

[5] In *Jumara*, the Third Circuit also found public interests to include "practical considerations that could make the trial easy, expeditious, or inexpensive." *Id.* at 880. However, the Court more recently clarified that, in light of *Atlantic Marine*, these concerns "represent a private interest." *In re: Howmedica Osteonics Corp*, 867 F.3d at 402 n. 7.

controversy between its residents, a valid forum-selection clause 'should be given controlling weight in all but the most exceptional cases.'") (quoting *Atlantic Marine*, 571 U.S. at 63).

Only the last factor—the familiarity of the local judge with state law—conceivably weighs against transfer. But, in considering this factor, the Third Circuit has expressed its "confiden[ce] that each court can become 'familiar[ ] . . . with the applicable state law.'" *In re: Howmedica Osteonics Corp*, 867 F.3d at 410 (quoting *Jumara*, 55 F.3d at 879-80). There is no reason to question an Ohio federal judge's ability to apply New Jersey law, much less enough to allow this one factor to override the others in favor of transfer. Indeed, the undersigned has been unable to identify any case in which a court denied transfer based solely on this factor.

For all of these reasons, the case should be transferred to the U.S. District Court for the Southern District of Ohio.

## II. In The Alternative, The Complaint Should Be Dismissed As It Fails To State Claims Under CEPA Or NJLAD

Should the Court decline to transfer Ms. Rosely's suit, it should dismiss it for failure to state a claim. The standard on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is well established: "the Court must generally accept as true the factual allegations in the complaint, and construe all 'reasonable inferences' in the light most favorable to the plaintiff." *Gutwirth v. Woodford Cedar Run Wildlife Refuge*, 38 F. Supp. 3d 485, 489 (D.N.J. 2014) (quoting *Gould v. Wetzel*, 547 Fed. Appx. 129, 131 (3d Cir. 2013)). "However, '[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action' fails to suffice." *Gutwirth*, 38 F. Supp. 3d at 489 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Moreover, the Court need not accept sweeping 'legal conclusions' cast in the form of 'bald assertions[,]' unwarranted inferences, or unsupported conclusions." *Gutwirth*, 28 F. Supp. 3d at 489 (alteration in original) (quoting *Stone v. N.J. Admin. Office of the Courts*, 557 Fed.Appx.

151, 154 (3d Cir. 2014)). "Rather, for a complaint to survive dismissal pursuant to this standard, it 'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Gutwirth*, 38 F Supp. 3d at 489 (quoting *Ashcroft*, 556 U.S. at 678).

### A. Ms. Rosely Fails To State CEPA Or NJLAD Retaliation Claims Because The Complaint Lacks Factual Allegations Suggesting Her Termination Was Caused By Her Complaints.

The Court should dismiss Ms. Rosely's CEPA and NJLAD retaliation claims because she cannot allege a *prima facie* case for retaliation under either law. Her complaint fails to allege that her termination was in any way related to any complaints she purportedly made.

Both CEPA and NJLAD retaliation claims are governed by the burden-shifting framework for Title VII claims set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).[6] Under this framework, in order to establish a prima facie case of discriminatory retaliation, a plaintiff "must show 1) that she engaged in protected activity, 2) that the employer took adverse action against her, and 3) that a causal link exists between the protected activity and the employer's adverse action." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). Under the third element, "a plaintiff must link the harassment at work to a retaliatory animus." *Spence v. Foxx*, 159 F. Supp. 3d 483, 499 (D.N.J. 2014). "Although the plaintiff need not prove that retaliation was the sole reason for an employer's adverse action, he or she must show that the action would not have been taken but for his or her protected activity." *Id.* *See also Hassell v.*

---

[6] *See Caver v. City of Trenton*, 420 F.3d 243, 255 (3d Cir. 2005) ("[T]he requirements to make out a prima facie CEPA claim mirror the Title VII requirements in that both claims require an adverse employment action and a causal link between that action and the protected activity."); *Moore v. City of Phila.,* 461 F.3d 331, 342 (3d Cir.2006) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Kolb v. Burns*, 727 A.2d 525, 531 (N.J. Super. App. Div. 1999) (adopting the Title VII retaliation framework and applying it to an NJLAD claim); *see also Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) ("All retaliation and discrimination claims brought under Title VII and the NJLAD . . . are controlled by the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*.").

*Johnson & Johnson*, No. 13-CV-4109 JAP, 2014 WL 1744266, at *6 (D.N.J. May 1, 2014) (granting motion to dismiss NJLAD retaliation claim because "[i]t is Plaintiff's burden to allege facts that would make such a causal link conceivable, and Plaintiff has failed to do so").

The facts as alleged in the Complaint fall woefully short of demonstrating a causal link between Ms. Rosely's termination and her alleged protected activity. She does not allege that any Defendant told her she was being let go because of her complaints. Nor does she allege any circumstantial evidence that would suggest that was the case. Instead, both her NJLAD and CEPA retaliation claims simply state that she engaged in protective activity and then—months later—she was let go.

But courts have routinely held that facts like these do not state a claim for retaliation. That is because, in order for temporal proximity to establish a prima facie case of retaliation, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (quotation omitted). Here, Ms. Rosely's NJLAD claim is based on allegations that "defendants terminated [her] employment just two months or so after she had complained that Pham was sexually harassing Ms. Fulton." Compl. ¶ 22. The timeline she alleges in her CEPA claims is even more attenuated. She claims that she engaged in a protected activity "[a]lmost immediately upon commencing employment" and then, *seven months later*, she was terminated as a result. Compl. §§ 14, 23, 33.

Courts within this Circuit have repeatedly found no causal link where the time between the alleged protected activity and retaliatory action is *under* the two months alleged to support Ms. Rosely's NJLAD claim, much less the seven-month gap in her CEPA claim. *See, e.g.*, *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three weeks between protected activity and termination); *Blakney v. City of Phila.*, 559 F. App'x. 183, 186 (3d Cir. 2014) ("We have found

that a temporal proximity of two days is unusually suggestive of causation, but have held that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive."); *Reganato v. Appliance Replacement Inc.*, No. CV 15-6164 (RMB/JS), 2017 WL 747463, at *7 (D.N.J. Feb. 27, 2017) (two weeks), *aff'd*, 727 F. App'x 40 (3d Cir. 2018) ; *Escanio v. United Parcel Serv.*, 538 Fed.Appx. 195, 200 (3d Cir. 2013) (three weeks); *Taylor v. Lincare, Inc.*, No. CV 15-6284 (RMB/JS), 2016 WL 3849852, at *7 (D.N.J. July 15, 2016) (five weeks).

In short, Ms. Rosely fails to plead facts that would raise an inference of a causal link between her complaints and her termination. The Court should dismiss her CEPA and NJLAD claims.

### B. Ms. Rosely Fails To State An NJLAD Claim For Age Discrimination Because She Fails To Allege Facts Showing Her Termination Was Because Of Age.

The Court should also dismiss Ms. Rosely's NJLAD claim because the facts as alleged cannot demonstrate that her age was a motivating factor for her termination. She does not allege that she was replaced by anyone, much less someone younger. Even if she had, her claim should be dismissed because she was hired and fired while a member of the protected class—and all within seven months.

In order to make a *prima facie* case of age discrimination under the NJLAD, "a plaintiff must demonstrate that she (1) is a member of the protected class, (2) was qualified for the position held, (3) suffered an adverse employment action, and (4) 'ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination.'" *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 938 (3d Cir. 2009) (citing *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004)). Ms. Rosely's Complaint fails to state a claim because she fails to allege that she was replaced by a sufficiently younger person—or, for that matter, any person at all.

As the New Jersey Supreme Court has recognized, this fourth element exists "to permit an inference of age discrimination." *Bergen Com. Bank*, 157 N.J. at 213. *See also Monaco*, 359 F.3d at 309 ("[T]he facts of this case demonstrate why a terminated plaintiff should not be able . . . to demonstrate a prima facie case of age discrimination without showing a difference in age between him or her and the replacement employee sufficient to support an inference of age discrimination."). Because Ms. Rosely's complaint has failed to allege that she was replaced by a younger candidate, her age discrimination claim must be dismissed. *See, e.g.*, *Monaco*, 359 F.3d at 302 ("[W]e are not at liberty to ignore *Sisler*'s language recognizing the necessity of a sufficient age differential between the terminated and replacement employees for the plaintiff to establish a prima facie case of age discrimination demonstrating the presence of its fourth element."); *Nahaczewski v. Buck Glob., LLC*, No. CV201241 (SDW) (LDW), 2022 WL 2952952, at *6 (D.N.J. July 26, 2022) ("For the fourth element of a prima facie case, Plaintiff must establish that he 'ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination.'") (citation omitted).

But even if she had done so, this Court should dismiss her age discrimination claim because she has alleged that she was hired and fired while a member of the protected class—all within a seven-month period. "Courts have rejected age discrimination claims when a plaintiff was both hired and fired while a member of the protected age group." *Young v. Hobart W. Grp.*, 385 N.J. Super. 448, 461 (App. Div. 2005); *see also Thomasian v. New Jersey Inst. of Tech.*, No. CIV. 08-2218 (FSH), 2010 WL 1032653, at *5 (D.N.J. Mar. 16, 2010) ("In cases such as this, where the Plaintiff was both hired and fired while a member of the protected class of people over age 40, there is a presumption against age discrimination as a motivating factor for termination.") (citing *Young*). "This presumption is particularly appropriate where . . . the lapse between the hiring and

firing is not very long." *Malloy v. Intercall, Inc.*, No. CIV.A. 08-01182-JLL, 2010 WL 5441658, at *12 (D.N.J. Dec. 28, 2010).

Here, Ms. Rosely alleges no additional facts that would or could rebut the presumption against her claim of age discrimination. Though she points to the fact that other employees were fired on the same day, one of those employees—Mr. Towey—was only one year older than Defendant Frericks. *Compare* Compl. ¶ 17 (noting that Mr. Towey was 40 years old) with Compl. ¶ 18 (demonstrating that Mr. Frericks was 39 years old); *see Stamos v. AoP Operating Co., LLP*, No. CV201676 (MAS) (TJB), 2022 WL 5103135, at *7 (D.N.J. Oct. 4, 2022) ("Nor is it lost on the Court that Stamos was hired at age 57 and terminated at age 60, and Solano was approximately the same age as Stamos when he fired him.").

For all of these reasons, the Court should dismiss Ms. Rosely's age discrimination claims.

### C. Ms. Rosely Fails To State An NJLAD Or CEPA Claim For Individual Liability Against Defendant Ramaswamy Because The Complaint Makes Only A Conclusory Allegation That He Participated In The Alleged Unlawful Conduct.

Though Ms. Rosely's NJLAD and CEPA claims should be dismissed against all Defendants for the reasons stated above, they should separately be dismissed against Mr. Ramaswamy because the Complaint fails to allege that he was in any way involved in her termination.

To prove that an individual person is liable under the NJLAD for aiding and abetting unlawful action, there must be "active and purposeful conduct." *Tarr v. Ciasulli*, 181 N.J. 70, 83 (2004). To ultimately prevail, a plaintiff must demonstrate that a defendant was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance." *Id.* at 84. Similarly, "[t]o state a claim for individual liability under CEPA, a plaintiff must 'aver factual allegations that, if accepted as true, could establish how each individual defendant was

personally liable for a CEPA violation,' including by showing 'that each defendant took a retaliatory adverse employment action against [plaintiff] that was causally linked with [plaintiff]'s alleged disclosure of 'unethical, unlawful, illegal, fraudulent, and corrupt activity.'" *McKenna v. Verint Americas Inc.*, No. CV 22-02370 (FLW), 2022 WL 3211422, at *6 (D.N.J. Aug. 9, 2022). But a claim may not survive a motion to dismiss where a Plaintiff "has not supported [her] conclusory claims with allegations of any specific measures that [a defendant] aided and abetted Plaintiff's termination." *Id.*

Here, the only allegation suggesting Mr. Ramaswamy was even involved in the decision to terminate Ms. Rosely is that Mr. Ramaswamy came to the office the day after she and others were terminated to assure employees that "*we* had to do this," Compl. ¶ 19, and an assertion that Mr. Ramaswamy announced the appointment of Strive's new CEO two weeks later, "demonstrating that [he] remain[ed] involved in the day-to-day decisions regarding who manages defendant Strive." These conclusory allegations fail far short of raising a plausible inference that Mr. Ramaswamy was "generally aware" of unlawful activity or that he "took a retaliatory adverse employment action against [Ms. Rosely] that was causally linked" with her protected activity. *See McKenna*, 2022 WL 3211422 at *6 (granting motion to dismiss where "Plaintiff merely alleges, in a conclusory manner, that Zember conspired with Wilkie to become Plaintiff's direct supervisor, and created pretextual reasons to terminate Plaintiff's employment.").

In short, no allegations in the Complaint suggest Mr. Ramaswamy was directly involved in the decision to fire her, much less that he did so for unlawful reasons.

**CONCLUSION**

For the foregoing reasons, Defendants Strive Asset Management, Anson Frericks, and Vivek Ramaswamy respectfully request that the Court transfer the matter to the United States District Court for the Southern District of Ohio or, in the alternative, dismiss the Complaint.

Dated: January 9, 2024

ELLIS GEORGE CIPOLLONE O'BRIEN LLP

By: s/John V. Coghlan

John V. Coghlan
1155 F Street, NW, Suite 750
Washington, DC 20004
Telephone: (202) 249-6900
Facsimile: (202) 249-6899
jcoghlan@egcfirm.com

Brett D. Katz
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
bkatz@egcfirm.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2024, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system and thereby served upon all counsel of record.

s/John V. Coghlan
John V. Coghlan