UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOYCE ROSELY., Plaintiff, | Civil Action No. 2:23-cv-20772-JXN-CLW |
| v. | The Honorable Julien X. Neals, U.S.D.J.<br>The Honorable Cathy L. Waldor, U.S.M.J. |
| STRIVE ASSET MANAGEMENT LLC, ANSON FRERICKS, and VIVEK RAMASWAMY, Defendants. | **ORAL ARGUMENT REQUESTED**<br><br>Motion Return Date: February 20, 2024 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE OR IN THE ALTERNATIVE TO DISMISS**

**LENZO & REIS, LLC**
360 Mount Kemble Ave., Suite 1004
Morristown, New Jersey 07960
(973) 845-9922
*Attorneys for Plaintiff*

**Christopher P. Lenzo**
*Of Counsel and On the Brief*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT....................1

STATEMENT OF FACTS....................4

PROCEDURAL HISTORY....................9

ARGUMENT....................10

POINT I....................10

DEFENDANTS' MOTION TO TRANSFER VENUE SHOULD BE DENIED BECAUSE BY ITS PLAIN LANGUAGE, THE CONTRACTUAL FORUM-SELECTION CLAUSE AT ISSUE APPLIES ONLY TO ACTIONS TO ENFORCE THE EMPLOYMENT CONTRACT IN WHICH IT IS CONTAINED, NOT THE STATUTORY CLAIMS FOR RETALIATION AND DISCRIMINATION THAT PLAINTIFF HAS PLEADED....................10

POINT II....................18

DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF HAS ADEQUATELY PLEADED CLAIMS FOR RETALIATION, AGE DISCRIMINATION, AND INDIVIDUAL LIABILITY....................18

A. Plaintiff Has Adequately Pleaded Causation For Her Retaliation Claims....................18

B. Plaintiff Need Not Prove Replacement By A Younger Person To Prevail On A Claim For Age Discrimination....................21

C. Defendant Has Not Addressed The Standard For Individual Liability Under CEPA....................23

D. Plaintiff Has Adequately Pleaded Individual Liability Under The LAD Against Defendant Ramaswamy....................24

CONCLUSION....................28

# TABLE OF AUTHORITIES

## CASES

Acuity v. Progressive Spec. Ins. Co., 2023 WL 9234879 at *2 (Oh. 2023)................................11

Bergen Community Bank v. Sisler, 157 N.J. 188 (1999)..........................................................22

Bohl v. Hauke, 906 N.E.2d 450 (Ohio App. 2009).......................................................................15

Bohlen v. Anadarko E&P Onshore, L.L.C., 80 N.E.3d 468, 471 (Oh. 2017) .............................12

Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 594 (2008)...............................24, 26

City of St. Marys v. Auglaize County Bd. of Comms., 875 N.E.2d 561, 566 (Oh. 2007)...........12

Collins v. Mary Kay, Inc., 874 F.3d 176 (3d Cir. 2017)..............................................................14

Davi v. Cabana Pools, Inc., 135 N.J. Super. 372, 378 (App. Div. 1975.......................................26

Donofry v. Autotote Systems, Inc., 350 N.J.Super. 276, 292 (App. Div. 2001)..........................18

DeWees v. RCN Corp., 380 N.J. Super. 511, 525-26 (App. Div. 2005)......................................22

Espinosa v. Continental Airlines, 80 F.Supp.2d 297, 306 (D.N.J. 2000)....................................23

Fasano v. Federal Reserve Bank of New York, 457 F.3d 274, 289 (3d Cir. 2006)......................23

Fuchilla v. Layman, 109 N.J. 319, 334 (1988)..............................................................................25

Funkhouser v. Wells Fargo Bank, N.A., 289 F.3d 1137, 1143 (9th Cir. 2002).......................13-14

Hurley v. Atlantic City Police Department, 174 F.3d 95 (3d Cir. 1999).....................................25

In re All Kelley & Ferraro Asbestos Cases, 821 N.E.2d 159, 168 (Oh. 2004).............................12

In re McGraw-Hill Global Education Holdings LLC, 909 F.3d 48, 58 (3d Cir. 2018)................11

Martin Marietta Magnesia Specialties, L.L.C. v. Public Utilities Comm'n of Ohio, 954 N.E.2d 104, 110 (Oh. 2011)...................................................................................................................12

Marzano v. Computer Science Corp., Inc., 91 F.3d 497, 506 (3d Cir. 1996)...............................22

Orthopaedic & Spine Center, LLC v. Henry, 2017 WL 6035234 (S.D. Ohio)............................15

Palladino ex rel. U.S. v. VNA of Southern NJ, Inc., 68 F.Supp.2d 455, 474 (D.N.J. 1999..........24

Polansky v. Forest River, Inc., 2023 WL 5486259 (S.D. Ohio 2023..........................................16

Reading Health System v. Bear Stearns & Co., 900 F.3d 87, 98 (3d Cir. 2018...........................11

Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543 (App. Div. 1995)......20-21

Sunoco, Inc. v. Toledo Edison Co., 953 N.E.2d 285, (Oh. 2011)................................................12

Travelers Prop. Cas. Co. of Am. v. Centimark, Corp., 2005 WL 1038842 (S.D. Ohio)..........14-15

Varsity Gold, Inc. v. Koone, 2009 WL 10690075 (N.D. Ohio).............................................16-17

Willams v. Pemberton Twp. Pub. Schools, 323 N.J. Super. 490, 502 (App. Div. 1999).........21-22

**STATUTES**

N.J.S.A. 10:5-1 et seq....................................................1
N.J.S.A. 10:5-12(d) ....................................................26
N.J.S.A. 34:19-1 et seq....................................................1
N.J.S.A. 34:19-2(a)....................................................23
N.J.S.A. 34:19-3....................................................23

**OTHER AUTHORITIES**

New Jersey Model Civil Jury Charge 2.22A....................................................24-25

## PRELIMINARY STATEMENT

In this case, plaintiff Joyce Rosely asserts claims against her former employer, defendant Strive Asset Management LLC, and her former supervisors and Strive co-founders, defendants Anson Frericks and Vivek Ramaswamy, for retaliatory discharge in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq., and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 et seq., as well as an LAD claim for age discrimination against all three defendants. Defendants have filed the present motion to transfer venue to the Southern District of Ohio or in the alternative to dismiss the Complaint on the pleadings for failure to state any cognizable claims in lieu of filing an Answer to the Complaint.

This Court should deny defendants' motion to change forum because the motion is premised solely upon a choice-of-venue clause in plaintiff's employment contract that is limited to "[a]ny action or proceeding by either of the parties to *enforce this Agreement*". (Emphasis added.) Plaintiff does not seek to enforce her employment contract because defendants did not breach that agreement by dismissing her. Indeed, defendants readily admit that the contract permitted them to fire plaintiff "at any time and for any reason". (Db 4). Thus, any claim by plaintiff for breach of the employment agreement would actually be frivolous. Because plaintiff has no legally valid claims arising out of the contract containing

the choice-of-forum provision, all of the case law cited by defendants regarding "artful pleading" and the relationship between a plaintiff's contractual claims and non-contractual claims in the context of contractual choice-of-venue clauses has absolutely no bearing on this Court's analysis here. Moreover, virtually every case cited by defendants in support of their motion to transfer is factually distinguishable from the case at bar because the choice-of forum provisions in those cases were worded much more broadly to embrace many more types of claims than the clause at issue here.

Defendants' alternative motion to dismiss on the pleadings should also be denied. First, plaintiff has adequately pleaded causation for her retaliation claims. Defendants' improperly cite only federal case law for the proposition that a two-month period between a plaintiff's protected activity and the subsequent termination of that employment is too long to support an inference of retaliatory discharge. Plaintiff has brought her claims for retaliatory discharge only under New Jersey statutes (CEPA and the LAD), and applicable New Jersey case law does not construe temporal proximity in such an arbitrary and cabined manner. Moreover, plaintiff has also alleged that defendants dismissed the only two employees (she and Jeff Nye) who objected to violations of securities laws by defendants Frericks and Ramaswamy. Second, applicable New Jersey case law does not require a plaintiff to show replacement by a younger person to establish a

prima facie case of age discrimination, particularly in the context of a reorganization or reduction-in-force such as the one that defendants claim resulted in plaintiff's firing here. Third, defendants have not addressed at all the standard for individual liability under CEPA, which plaintiff has adequately pleaded as to defendant Ramaswamy. Last, plaintiff has adequately pleaded the elements of individual liability under the LAD against defendant Ramaswamy.

For the foregoing reasons, this Court should deny defendants' motion in its entirety.

## STATEMENT OF FACTS[1]

Plaintiff Joyce Rosely began working for defendant Strive as Executive Vice President and Co-Head of Institutional Sales and Distribution on or about August 2, 2022. (Coghlan Decl., Exh. 1, Complaint, Paras. 1 and 5). Throughout her employment, Ms. Rosely's primary place of employment was her home in Westfield, New Jersey. (Id., Para. 1). Ms. Rosely always performed her job well, as demonstrated by her sales numbers and the positive written performance evaluation that she received in or about February 2023, just a month or so before defendants unlawfully discharged her. (Id., Para. 6).

Defendants Anson Frericks and Vivek Ramaswamy co-founded and co-own defendant Strive. (Id., Paras. 3 and 4). Both exercised supervisory authority over Ms. Rosely. (Ibid). In doing so, both individual defendants repeatedly directed Ms. Rosely to violate applicable securities laws, which she steadfastly refused to do. (Ibid). Defendants Frericks and Ramaswamy also both participated in the decision to dismiss Ms. Rosely. (Ibid).

Almost immediately upon commencing employment, Ms. Rosely faced demands from defendants Frericks and Ramaswamy to violate applicable securities laws. (Id., Para. 7). Among those unlawful demands were (1) directions to utilize non-compliant sales material that improperly promised future investment returns,

[1] Because this is a motion to dismiss on the pleadings, the factual allegations in this section of plaintiff's brief are drawn directly from plaintiff's Complaint.

(2) instructions to new employees to engage in sales activities before those employees' securities licenses had been transferred to defendant Strive, (3) pressure to send out sales materials before those documents had been approved by the company's outside compliance vendor, Foreside, (4) orders to have non-registered employees discuss defendant Strive's securities products with potential clients over the telephone, and (5) insistence on creating deal books and soliciting business on investment products before those products were registered and actively traded. (Id., Para. 8). Indeed, defendants Frericks and Ramaswamy themselves unlawfully engaged in securities sales activities despite the fact that neither has a securities license. Defendant Frericks called and e-mailed individual investors, while defendant Ramaswamy unlawfully engaged in securities sales activity on Twitter. Ms. Rosely and Jeff Nye (Executive Vice President and Head of Wealth Management Distribution) repeatedly objected to all of the foregoing unlawful conduct in conversations with defendants Frericks and Ramaswamy. (Id., Para. 9).

In or about January 2023, Ms. Rosely heard from Mr. Nye that a new employee named Shelby Fulton had disclosed to Mr. Nye that she was being pursued romantically by Chief Operating Officer Ben Pham in an aggressive manner. (Id., Para. 10). Ms. Rosely met with Head of People Strategy Laura Brady and expressed concern that Pham's conduct was creating potential legal liability for defendant Strive. More specifically, Ms. Rosely informed Brady that

when she had traveled with Pham and Ms. Fulton, she had found the interactions between Pham and Ms. Fulton very uncomfortable to observe. Brady asked Ms. Rosely to "keep an eye on them and report back", indicating to Ms. Rosely that she would eventually address the situation; however, to Ms. Rosely's knowledge, neither Brady nor anyone else acting on behalf of defendant Strive did anything to deter Pham from pressuring a newly-hired subordinate into a sexual relationship. (Id., Para. 11). When Ms. Rosely brought the issue up with defendant Frericks, his only response was that it was none of his business. (Id., Para. 12). Ms. Rosely even went so far as to confront Pham directly about why Ms. Fulton was repeatedly traveling with him unnecessarily, but Pham told Ms. Rosely to mind her own business. (Id., Para. 13).

On or about March 21, 2023, defendant Frericks and Brady met with Ms. Rosely and summarily fired her with no prior notice or warning. The only explanation that they provided to Ms. Rosely was that the company was "reorganizing", and as a result, there was "no longer a position" for her. (Id., Para. 14). Defendant Frericks also terminated the employment of Mr. Nye, Senior Vice President and Regional Sales Director John Phillips, and Senior Vice President and Regional Sales Director J.P. Towey that day. (Id., Para. 15).

Significantly, Ms. Rosely (age 52 at that time), Mr. Nye (age 54), and Mr. Phillips (age 53) were the only Strive employees aged 50 or older at that time. (Id.,

Para. 16). Ms. Rosely is older than her Co-Head of Institutional Sales and Distribution, who was retained; Mr. Phillips was the oldest Regional Sales Director; and Mr. Towey (age 40) was let go, while the two Regional Sales Directors in their thirties were retained. (Mr. Nye had no counterparts or peers.) (Id., Para. 17). Defendant Frericks was the immediate supervisor for Ms. Rosely and Mr. Nye. Notably, defendant Frericks is approximately 13 years younger than Ms. Rosely and 15 years younger than Mr. Nye. (Id., Para. 18).

The day after defendants terminated Ms. Rosely's employment, defendant Ramaswamy came to defendant Strive's Dublin, Ohio office in person to reassure employees about their job security, stating that "we had to do this" in reference to the dismissals, indicating that he participated in the firing decisions. Approximately two weeks later, defendant Ramaswamy again came to the Dublin office in person to announce that Matt Cole was assuming the role of Chief Executive Officer, demonstrating that defendant Ramaswamy remained involved in the day-to-day decisions regarding who manages defendant Strive. (Id., Para. 19). Defendant Ramaswamy is approximately 16 years younger than Ms. Rosely. (Id., Para. 20).

Notably, defendants discharged the two employees (Ms. Rosely and Mr. Nye) who repeatedly objected to their demands that securities laws be violated. (Id., Para. 21).

Also significant, defendants fired Ms. Rosely just two months or so after she had complained that Pham was sexually harassing Ms. Fulton. (Id., Para. 22).

## PROCEDURAL HISTORY

Plaintiff filed suit in the Superior Court of New Jersey, Law Division, Civil Part, Union County, on August 8, 2023. (Coghlan Decl., Exh. 1). Defendants removed the case to this Court on the basis of diversity jurisdiction. (ECF No. 1).

## ARGUMENT

## POINT I

**DEFENDANTS' MOTION TO TRANSFER VENUE SHOULD BE DENIED BECAUSE BY ITS PLAIN LANGUAGE, THE CONTRACTUAL FORUM-SELECTION CLAUSE AT ISSUE APPLIES ONLY TO ACTIONS TO ENFORCE THE EMPLOYMENT CONTRACT IN WHICH IT IS CONTAINED, NOT THE STATUTORY CLAIMS FOR RETALIATION AND DISCRIMINATION THAT PLAINTIFF HAS PLEADED**

Defendants rely upon the following choice-of-venue provision in plaintiff's employment agreement to support their motion to transfer this matter to the Southern District of Ohio: "Any action or proceeding by either of the parties *to enforce this Agreement* must be brought only in a state or federal court located in the State of Ohio." (Coghlan Decl., Exh. 2, Employment Agreement, Para. 11.5, P. 9) (emphasis added). By its plain language, that clause only applies to actions to enforce the contract. However, none of plaintiff's claims seek enforcement of the agreement. That is because defendants did not breach the contract when they discharged plaintiff. Indeed, defendants readily admit that the agreement permitted them to dismiss plaintiff "at any time and for any reason". (Db 4). Nothing in the foregoing forum-selection provision requires plaintiff to bring her statutory retaliation and discrimination claims in Ohio. Defendants could have easily drafted a choice-of-venue clause that did require plaintiff to bring such claims in Ohio. For example, they could have written a provision that applied to "any action or proceeding relating in any way to this Agreement", or one that embraced "any

action or proceeding arising out of this Agreement", or a more transparent version that encompassed "any action or proceeding relating in any way to the employment relationship between the parties, including but not limited to claims arising from the termination of that relationship". However, defendants chose not to draft a broadly worded forum-selection provision and cannot ask this Court to rewrite the contract for them. They and this Court are bound by the plain and unambiguous language of the agreement.

"A scope-based challenge to the applicability of a forum-selection clause presents a quintessential question of contract interpretation." Reading Health System v. Bear Stearns & Co., 900 F.3d 87, 98 (3d Cir. 2018). "'Whether or not a forum selection clause applies' to a particular dispute 'depends on what the specific clause at issue says.'" Ibid. "State law … typically governs whether the [choice-of-venue] clause covers a particular claim…." In re McGraw-Hill Global Education Holdings LLC, 909 F.3d 48, 58 (3d Cir. 2018). The employment agreement here also contains a choice-of-law provision applying Ohio law. The Buckeye State does not vary from the Garden State (or likely any of the other 48 members of the Union) in following long-standing black-letter contract law that requires courts to apply unambiguous contract terms according to their plain language without further interpretation. See, e.g., Acuity v. Progressive Specialty Ins. Co., ___ N.E.3d ___, 2023 WL 9234879 at *2 (Oh. 2023) (holding that "for …

any … contract, '[a] court has an obligation to give plain language its ordinary meaning and to refrain from rewriting the contractual agreement of the parties'") (internal citation omitted); Bohlen v. Anadarko E & P Onshore, L.L.C., 80 N.E.3d 468, 471 (Oh. 2017) (holding that "the unambiguous language of the contract governs and courts 'will not give the contract a construction other than that which the plain language of the contract provides'") (internal citation omitted); Martin Marietta Magnesia Specialties, L.L.C. v. Public Utilities Comm'n of Ohio, 954 N.E.2d 104, 110 (Oh. 2011) (holding that "'courts will not giver the contract a construction other than that which the plain language of the contract provides'") (internal citation omitted); Sunoco, Inc. v. Toledo Edison Co., 953 N.E.2d 285, (Oh. 2011) (holding that "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties"); City of St. Marys v. Auglaize County Board of Commissioners, 875 N.E.2d 561, 566 (Oh. 2007) (holding that "[w]here the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract"); In re All Kelley & Ferraro Asbestos Cases, 821 N.E.2d 159, 168 (Oh. 2004) (holding that "[w]here the terms are clear and unambiguous, a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties"). The foregoing case law dictates only one outcome for defendants' motion to transfer venue: denial.

Defendants attempt to evade that unavoidable conclusion by engaging in mental gymnastics to contort plaintiff's statutory retaliation and discrimination claims into an "artfully pleaded" action to enforce the employment agreement. According to defendants, because "Ms. Rosely seeks compensatory damages relating to her termination" and "such damages would necessarily incorporate the amounts owed to her pursuant to her employment agreement", "Ms. Rosely's suit seeks to enforce the employment agreement by granting her the benefits of it." (Db 10-11). However, defendants are deliberately disregarding the very fundamental legal distinction between liability and damages. Any recovery that Ms. Rosely wins in this action for the pay she would have earned under the employment agreement will not stem from defendants' liability for breaching the agreement; rather, it will be in the form of compensatory damages arising from defendants' liability for engaging in unlawful retaliation and/or discrimination. Defendants' tortuous "compensatory damages for lost pay equals enforcement of the employment agreement" logic bears a strong resemblance to the arguments employers have unsuccessfully made that the mere fact that an employee's non-ERISA claims seek damages for lost ERISA benefits converts the claims into preempted ERISA claims. Those efforts have consistently failed. See, e.g., Funkhouser v. Wells Fargo Bank, N.A., 289 F.3d 1137, 1143 (9th Cir. 2002) (holding that "a claim does not 'relate to' an ERISA employee benefit plan simply

because a court would refer to the plan in calculating damages"). Here, plaintiff's claims do not seek enforcement of the employment agreement "simply because a jury would refer to the agreement in calculating damages".

None of the cases cited by defendants change the foregoing analysis, because those cases are all factually distinguishable from the case at bar based on the specific language of the forum-selection clauses at issue and the types of claims asserted. In Collins v. Mary Kay, Inc., 874 F.3d 176 (3d Cir. 2017) (cited at Db 8-9), a New Jersey employee brought wage claims against her Texas-based employer. The plaintiff had signed two employment agreements with the defendant that included identical choice-of-venue provisions requiring "any dispute or controversy [that] arises between them concerning *any matter relating to this Agreement* … shall be submitted to the jurisdiction of the courts of the State of Texas … [in] Dallas, Dallas County, Texas." Id. at 179 (emphasis added). Based on the broad wording of those clauses, the court held that the plaintiff was required to bring her wage claims in Texas. Here, in contrast, as explained above, the forum-selection provision is worded narrowly to apply only to actions to enforce the employment agreement, and plaintiff does not have (and has not brought) a claim for breach of contract. The same analysis applies to distinguish Travelers Property Casualty Co. of America v. Centimark, Corp., 2005 WL 1038842 (S.D. Ohio) (cited at Db 11-12), because the choice-of-venue clause in that breach of

contract and breach of warranty case was similarly broadly worded to apply to "any dispute arising under or pursuant to the terms of this Warranty". Id. at *1.

In Bohl v. Hauke, 906 N.E.2d 450 (Ohio App. 2009) (cited at Db 11), the plaintiffs initially filed breach of contract and breach of warranty claims against one defendant, but then amended their Complaint to add claims for negligence and breach of the duty of good faith and fair dealing against a second defendant. Id. at 454. The warranty contained a choice-of-venue clause that required the parties to bring claims under it in Harris County, Texas. The court ruled that all of the claims (contractual and non-contractual, warranty-based and non-warranty-based) against both defendants had to be brought in Harris County under that provision because all of the claims were closely related to the warranty claim. Here, on the other hand, plaintiff does not have (and has not brought) any claim for breach of the contract containing the forum-selection provision. Thus, defendants arguments about "artful pleading" and relatedness of claims bear no relevance to the Court's analysis in this case.

In Orthopaedic & Spine Center, LLC v. Henry, 2017 WL 6035234 (S.D. Ohio) (cited at Db 12), the plaintiff filed suit against the defendant for breach of the employment agreement between the parties. The agreement contained a choice-of-venue clause; however, the plaintiff had not filed the case in the specified forum. Consequently, the court dismissed the case for having been

brought in an improper venue. Again, plaintiff here does not have (and has not brought) any legal claims based on the employment agreement containing the forum-selection provision, so the Orthopaedic decision is distinguishable.

In Polansky v. Forest River, Inc., 2023 WL 5486259 (S.D. Ohio 2023) (cited at Db 13), the plaintiff brought breach of express warranty, implied warranty, and contract claims against two defendants, statutory lemon law claims against one of those defendants and a third defendant, a statutory consumer fraud claim against all defendants, and a statutory deceptive trade practices claim against all defendants. The warranty from one of the defendants contained a choice-of-venue clause applying to "disputes relating to this limited warranty, an alleged breach of warranty, breach of implied warranties, or misrepresentations of any kind". Because every claim brought by the plaintiffs involved some form of misrepresentation or the existence of a warranty as an element, the court transferred all of the claims against all of the defendants to the specified forum. Yet again, plaintiff here does not have (and has not brought) any claims under the employment agreement, so Polansky has no application to the resolution of the motion at bar.

In Varsity Gold, Inc. v. Koone, 2009 WL 10690075 (N.D. Ohio) (cited at Db 13), the plaintiff brought claims against some of its former sales representatives for tortious interference and unjust enrichment in connection with the defendants

allegedly attempting to solicit away customers of plaintiff that the defendants only came to know through their employment with the plaintiff. All of the defendant sales representatives had entered into employment agreements with the plaintiff. Those agreements contained forum-selection provisions applying to "[a]ll lawsuits, claims or other legal proceedings arising from or related to this Agreement". Id. at *2. Pursuant to that broad language, the court transferred venue to the specified forum. Here, defendants do not have such broad language upon which to rely.

For the foregoing reasons, this Court should deny defendants' motion to transfer venue.

**POINT II**

**DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF HAS ADEQUATELY PLEADED CLAIMS FOR RETALIATION, AGE DISCRIMINATION, AND INDIVIDUAL LIABILITY**

**A. Plaintiff Has Adequately Pleaded Causation For Her Retaliation Claims.**

Defendants' argument for substantive dismissal of plaintiff's retaliation claims boils down to three points, all of which relate to the element of causation, and all of which are either legally or factually meritless. First, defendants state that plaintiff "does not alleged that any Defendant told her that she was being let go because of her complaints." (Db 17). That is a true statement. However, as defendants must certainly recognize, the law does not require retaliation plaintiffs to produce direct evidence of retaliatory motive, because to do so would render anti-retaliation laws pointless; no manager with a functioning brain stem is going to tell an employee that an adverse employment action had unlawful motives. Consequently, New Jersey law holds that in retaliation cases, "[a]s in any cause of action, plaintiff can meet th[e] burden [of proof] by means of circumstantial as well as direct evidence, or a combination of the two." Donofry v. Autotote Systems, Inc., 350 N.J.Super. 276, 292 (App. Div. 2001).

Second, defendants contend that plaintiff has not offered any circumstantial evidence suggesting that her whistleblowing regarding potential securities law

violations and potential sexual harassment caused her discharge. That is simply untrue. Plaintiff has offered several forms of circumstantial evidence supporting the inference of retaliatory causation.

Among those pieces of evidence is the fact that defendants Frericks and Ramaswamy continued to pressure Ms. Rosely and Mr. Nye to violate securities laws and continued to violate securities laws themselves despite the repeated objections posed by Ms. Rosely and Mr. Nye. (Coghlan Decl., Exh. 1, Complaint, Para. 9). That suggests a motive on the part of the individual defendants to eliminate the obstacles to their continued securities law violations: Ms. Rosely and Mr. Nye. Significantly, they were the only two employees who objected to the securities law violations, and they were both dismissed on the same day. (Id., Para. 21). Also notable, defendants retained Ms. Rosely's Co-Head of Institutional Sales and Distribution, who did *not* object to the securities law violations. (Id., Para. 17).

Similarly, despite Ms. Rosely's objections to Chief Operating Officer Ben Pham's sexual pursuit of a new low-level female employee, no one acting on behalf of defendant Strive did anything to investigate or remediate. (Id., Para., 11). Moreover, Pham and defendant Frericks actually told Ms. Rosely to mind her own business when she raised this issue separately with each of them. (Id., Paras. 12 and 13). Again, that suggests a motive on the part of defendants to dispose of the

hindrance to the Chief Operating Officer continuing his sexually aggressive behavior toward a powerless new hire: Ms. Rosely. Finally, defendants fired Ms. Rosely just two months after she complained about Pham's sexual harassment and only one month after she received a positive written performance evaluation. (Id., Paras. 6 and 22).

That brings us to defendants third and final attack on plaintiff's causation evidence: two months is simply too long a gap between protected whistleblowing and retaliatory action to support an inference of causation based on temporal proximity. However, tellingly, defendants do not cite a single New Jersey state court decision regarding temporal proximity as support for plaintiff's New Jersey state law retaliation claims. Instead, they confine themselves to federal law. That is because New Jersey state courts have evinced a much more hospitable and flexible approach to temporal proximity in retaliation cases. The seminal New Jersey case on the issue is Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543 (App. Div. 1995). There, the Appellate Division reversed the grant of summary judgment to the defendant employer on an LAD retaliatory discharge claim, even though *ten years* had elapsed between the time at which the plaintiff gave an internal investigatory statement supportive of a fellow employee alleging sexual harassment and his subsequent dismissal. Id. at 545-47. The firing was also approximately *four months* after the defendant's in-house counsel accused the

plaintiff of changing his testimony to make it more favorable to the sexual harassment complainant on the eve of the sexual harassment trial. Ibid. The sexual harassment case settled on the second day of trial, approximately *three-and-a-half months* before the defendant fired the plaintiff. Ibid. As the court noted, it is "doubt[ful] that a sophisticated employer … would immediately retaliate[; r]ather, a jury may find that … defendant's wounds merely festered until an opportunity to terminate presented itself". Id. at 550. Thus, the most relevant case law supports plaintiff's reliance on temporal proximity of two months here.

For the foregoing reasons, this Court should deny defendants' motion to dismiss plaintiff's retaliation claims under CEPA and the LAD.

### B. Plaintiff Need Not Prove Replacement By A Younger Person To Prevail On A Claim For Age Discrimination.

Defendants are simply wrong as a matter of law that an age discrimination plaintiff must prove replacement by a sufficiently younger person to prevail under the LAD. With regard to discrimination claims in general, New Jersey courts have wisely recognized the need for flexibility in the formulation of legal elements to address the reality that discrimination occurs a variety of factual contexts:

> In light of the various contexts in which employment discrimination claims arise, we consider it unwise to require a plaintiff to establish unfailingly as part of the prima facie case that plaintiff was replaced by an individual outside the plaintiff's protected class. The appropriate fourth element of a plaintiff's prima facie case requires a showing that the challenged employment

> decision (i.e., failure to hire, failure to promote, wrongful discharge) took place under circumstances that give rise to an inference of unlawful discrimination. That formulation permits a plaintiff to satisfy the fourth element in a variety of ways.
>
> [Willams v. Pemberton Twp. Public Schools, 323 N.J. Super. 490, 502 (App. Div. 1999) (citations omitted.]

New Jersey courts have also held specifically that only "reverse" age discrimination plaintiffs (those alleging differential treatment based on their youth) need to show replacement by someone sufficiently older. See, e.g., DeWees v. RCN Corp., 380 N.J. Super. 511, 525-26 (App. Div. 2005). That is why defendants' citation to Bergen Community Bank v. Sisler, 157 N.J. 188 (1999) (the case that established that the LAD's age discrimination prohibition bars differential treatment based on youth) is inapposite here. See also Marzano v. Computer Science Corp., Inc., 91 F.3d 497, 506 (3d Cir. 1996) (holding under LAD that in the context of reduction force (as alleged by defendant here), plaintiff need only show that other workers of different protected class were retained, not that defendant hired replacement). Here, as required in Marzano, plaintiff has pleaded that her younger Co-Head of Institutional Sales and Distribution was retained. (Coghlan Decl., Exh. 1, Complaint, Para. 17).

Moreover, plaintiff has specifically alleged that defendants' only three employees over the age of 49 (including herself) were let go. (Id., Para. 16). She has also pleaded that the two Regional Sales Directors over the age of 39 were

discharged, while the two Regional Sales Directors in their thirties were retained. (Id., Para. 17). Finally, plaintiff has alleged that the relevant decision-makers regarding her dismissal (defendants Frericks and Ramaswamy) are over ten years younger than she is. (Id., Paras. 18 and 20). All of the foregoing is more than adequate to plead a prima facie case of age discrimination under the LAD.

For the foregoing reasons, this Court should deny defendants' motion to dismiss plaintiff's age discrimination claim.

### C. Defendant Has Not Addressed The Standard For Individual Liability Under CEPA.

Defendants have only addressed aiding-and-abetting liability under the LAD in their motion to dismiss the individual liability claims against defendant Ramaswamy. However, CEPA also provides for individual liability, but in a different way.

CEPA holds "employers" liable for whistleblower retaliation, N.J.S.A. 34:19-3, and defines "employer" to include "any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent", N.J.S.A. 34:19-2(a). Based on the foregoing statutory provisions, courts have held that "CEPA allows for individual employee liability", Fasano v. Federal Reserve Bank of New York, 457 F.3d 274, 289 (3d Cir. 2006), "individual defendants, including supervisors, can be held individually liable under CEPA", Espinosa v. Continental Airlines, 80 F.Supp.2d 297, 306 (D.N.J. 2000),

and "CEPA creates individual liability for agents of the employer, including supervisory employees who act with the authorization of the employer", Palladino ex rel. U.S. v. VNA of Southern New Jersey, Inc., 68 F.Supp.2d 455, 474 (D.N.J. 1999). Here, defendant Ramaswamy publicly admitted to the remaining Strive workforce the day after Ms. Rosely and her three colleagues were fired that he had participated in that decision. (Coghlan Decl., Exh. 1, Complaint, Para. 19). Under the foregoing statutory provisions and case law, plaintiff has adequately pleaded an individual liability claim against defendant Ramaswamy under CEPA.

For the foregoing reasons, this Court should deny defendant Ramaswamy's motion to dismiss plaintiff's individual liability claim against him under CEPA.

**D. Plaintiff Has Adequately Pleaded Individual Liability Under The LAD Against Defendant Ramaswamy.**

The Supreme Court of New Jersey has held that "individual liability of a supervisor for acts of discrimination [under the LAD] can only arise through the 'aiding and abetting' mechanism", which "'require[s] active and purposeful conduct'". Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 594 (2008) (quoting Tarr v. Ciasulli, 181 N.J. 70, 83 (2004)). Here, defendant Ramaswamy can be held liable for aiding and abetting in two different ways.

First, plaintiff can prove that defendant Ramaswamy aided and abetted defendant Strive in terminating plaintiff's employment for in retaliation for her sexual harassment complaints. That is the formulation that New Jersey Model

Civil Jury Charge 2.22A uses for individual liability under the LAD. Defendant Ramaswamy's public admission to the remaining Strive workforce the day after Ms. Rosely and her three colleagues were fired that he had participated in that decision supports such a theory of individual liability. (Coghlan Decl., Exh. 1, Complaint, Para. 19).

Second, as a matter of law, supervisors can be held liable for aiding and abetting based on their own unlawful retaliation. The Third Circuit held in Hurley v. Atlantic City Police Department, 174 F.3d 95 (3d Cir. 1999), that the LAD "allow[s] a … supervisor to be individually liable for aiding and abetting the actionable conduct of his employer, when the challenged conduct is … the supervisor's own [violation of the statute]." Id. at 126. Immunizing supervisors from individual liability for their own violations of the LAD would undermine New Jersey's "public policy to abolish discrimination in the work place." Fuchilla v. Layman, 109 N.J. 319, 334 (1988). Such immunity would irrationally hold a supervisor individually liable for merely encouraging another employee to violate the LAD, but not for his or her own violations of the statute; that makes no sense and creates a perverse incentive for the supervisor to step up his or her conduct from mere encouragement to affirmative wrongdoing. Moreover, granting supervisors personal immunity for their own acts of discrimination while imposing liability on their employers for those acts would also ignore fundamental principles

of agency law, which hold that both the principal *and the agent* are liable to third parties who are harmed by the agent's actions. See, e.g., Davi v. Cabana Pools, Inc., 135 N.J. Super. 372, 378 (App. Div. 1975). Defendant Ramaswamy's public admission to the remaining Strive workforce the day after Ms. Rosely and her three colleagues were fired that he had participated in that decision would also support this second theory of aiding-and-abetting liability. (Coghlan Decl., Exh. 1, Complaint, Para. 19).

Finally, while the Supreme Court held in Cicchetti, supra, that the aiding and abetting provision of the LAD is the only basis for individual liability under the statute, it appears that no plaintiff has ever argued to the Court and that the Court has never considered the fact that the plain statutory language of N.J.S.A. 10:5-12(d) explicitly provides for individual liability without proving aiding and abetting. That statutory provision makes it an unlawful employment practice "[f]or any person to … interfere with any person in the exercise or enjoyment of … any right granted or protected by this act." That very broad language clearly provides for individual liability for any violation of the LAD. While this Court may be constrained by the Supreme Court's holding in Cicchetti that the aiding and abetting provision is the only basis for individual liability under the LAD, plaintiff makes this alternative argument for individual liability to preserve it for appeal. Again, defendant Ramaswamy's public admission to the remaining Strive

workforce the day after Ms. Rosely and her three colleagues were fired that he had participated in that decision would also support this third alternative theory of individual liability. (Coghlan Decl., Exh. 1, Complaint, Para. 19).

For the foregoing reasons, this Court should deny defendant Ramaswamy's motion to dismiss plaintiff's individual liability claim against him under the LAD.

## CONCLUSION

For the foregoing reasons, this Court should deny defendants' motion in its entirety.

Respectfully submitted,

**LENZO & REIS, LLC**
*Attorneys for Plaintiff*

By: /s/ Christopher P. Lenzo
**CHRISTOPHER P. LENZO**

Dated: February 6, 2024