UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOYCE ROSELY,

Plaintiff,

v.

STRIVE ASSET MANAGEMENT LLC, ANSON FRERICKS, and VIVEK RAMASWAMY,

Defendants.

Civil Action No. 2:23-cv-20772-JXN-CLW

**ORAL ARGUMENT REQUESTED**

Motion Return Date: February 20, 2024

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO TRANSFER TO THE SOUTHERN DISTRICT OF OHIO OR, IN THE ALTERNATIVE, TO DISMISS**

TORRIDON LAW PLLC
John V. Coghlan, Esq.
1155 F Street NW, Suite 750
Washington, DC 20004
Telephone: (202) 249-6900
Facsimile: (202) 249-6899
*Attorney for Defendants*

ELLIS GEORGE LLP
Brett D. Katz, Esq.
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
*Attorney for Defendants*

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES .... ii

INTRODUCTION .... 1

ARGUMENT .... 4

I. The Case Should Be Transferred Because The Forum-Selection Clause In Ms. Rosely's Employment Agreement Covers Her Claims. .... 4

II. In The Alternative, The Court Should Dismiss The Case Because Ms. Rosely Fails To State Claims Under CEPA Or NJLAD. .... 8

A. Ms. Rosely Fails To Allege That Her Termination Was Caused By Her Complaints. .... 8

B. Ms. Rosely Fails To Allege Facts Showing That Her Termination Was Because Of Age. .... 12

C. Ms. Rosely Fails To Allege That Defendant Ramaswamy Participated In Any Unlawful Conduct. .... 14

# TABLE OF AUTHORITIES


CASES Page(s)

*Acuity, A Mut. Ins. Co. v. Progressive Specialty Ins. Co.*, __N.E. 3d __, 2023 WL 9234879 (Ohio 2023) .......... 5

*Bergen Community Bank v. Sisler*, 723 A.2d 944 (N.J. 1999) .......... 13

*Blakney v. City of Philadelphia*, 559 F. App'x 183 (3d Cir. 2014) .......... 10

*Bohl v. Hauke*, 906 N.E.2d 450 (Ohio App. 4th Dist. 2009) .......... 4, 5

*Bohlen v. Anadarko E & P Onshore, L.L.C.*, 80 N.E. 3d 468 (Ohio 2017) .......... 6

*Chakravarti v. Pegasus Consulting Grp., Inc.*, 923 A.2d 233 (N.J. Super. App. Div. 2007) .......... 7

*Escanio v. United Parcel Serv.*, 538 F. App'x 195 (3d Cir. 2013) .......... 11

*Funkhouser v. Wells Fargo Bank, N.A.*, 289 F.3d 1137 (9th Cir. 2002) .......... 7

*In re All Kelley & Ferraro Asbestos Cases*, 821 N.E.2d 159 (Ohio 2004) .......... 6

*Marley v. Postmaster Gen. of United States*, 747 F. App'x 901 (3d Cir. 2018) .......... 10

*Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 954 N.E. 2d 104 (Ohio 2011) .......... 6

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1083) .......... 11

*McKenna v. Verint Ams. Inc.*, No. CV 22-02370 (FLW), 2022 WL 3211422 (D.N.J. Aug. 9, 2022) .......... 15

*Monaco v. American General Assurance Company*, 359 F.3d 296 (3d Cir. 2004) .......... 2, 13, 14

*Newton v. S. Jersey Paper Products Co., Inc.*, 289 F.3d 1137 (D.N.J. 2020) .......... 7

*Orthopaedic & Spine Ctr., LLC v. Henry*, No. 2:16-CV-0893, 2017 WL 6035234 (S.D. Ohio Dec. 6, 2017) .......... 1, 5

*Reganato v. Appliance Replacement Inc.*, No. CV 15-6164 (RMB/JS), 2017 WL 747463 (D.N.J. Feb. 27, 2017), *aff'd*, 727 F. App'x 40 (3d Cir. 2018) .......... 11

*Romano v. Brown & Williamson Tobacco Corp.*, 665 A.2d 1139 (N.J. Super. App. Div. 1995) .......... 11, 12

*St. Marys v. Auglaize Cty. Bd. of Commrs.*, 875 N.E. 2d 561 (Ohio 2007) .................................... 6

*Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E. 2d 285 (Ohio 2011) .................................. 6

*Taylor v. Lincare, Inc.*, No. CV 15-6284 (RMB/JS), 2016 WL 3849852 (D.N.J. July 15, 2016) ........................................................................................................ 11

*Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003) ............................................. 11, 12

*Varsity Gold, Inc. v. Koone*, No. 3:08 CV 528, 2009 WL 10690075 (N.D. Ohio Jan. 20, 2009) ................................................................................................ 6, 7

*Young v. Hobart W. Grp.*, 897 A.2d 1063 (N.J. Super. App. Div. 2005) ................................. 2, 12

STATUTES

28 U.S.C. § 1404(a) ................................................................................................................ 4

## INTRODUCTION

Following her termination for underperformance, Plaintiff Joyce Rosely ("Ms. Rosely") brought this lawsuit claiming that she was actually discharged because she complained about alleged misconduct by her former colleagues or (in the alternative) because of her age. As explained in Defendants' Opening Brief, Ms. Rosely not only fails to allege facts that would make any of her claims plausible, but she waves away the Ohio forum-selection clause in the employment agreement she voluntarily signed. Her case should be transferred or, in the alternative, dismissed.

Ms. Rosely's Opposition Brief only further confirms that this Court should either transfer this case to the U.S. District Court for the Southern District of Ohio pursuant to the terms of her employment agreement or dismiss the case under controlling law.

*First*, Ms. Rosely's brief confirms that this case should be transferred. She admits—as she must—that she agreed in her employment agreement that Ohio is the proper venue for any action to enforce that agreement. And she points to no caselaw contradicting the cases cited in Defendants' Opening Brief showing that the language in her agreement encompasses her claims, despite her attempts to artfully plead her way around the agreement. *See, e.g., Orthopaedic & Spine Ctr., LLC v. Henry*, No. 2:16-CV-0893, 2017 WL 6035234, at *6 (S.D. Ohio Dec. 6, 2017) (forum selection clause governing "any disputes arising out of the interpretation and enforcement of Henry's employment agreement" covered extra-contractual claims). In any event, Ms. Rosely here is attempting to enforce the provisions of her agreement because she is seeking compensation that is available *only under* that very agreement. No amount of obfuscation by Ms. Rosely can change that fact.

*Second*, and more importantly, by attempting to avoid her agreement, Ms. Rosely clearly and unequivocally pleads her way out of any case at all. She repeatedly states that she "does not

seek to enforce her employment contract because ***defendants did not breach that agreement by dismissing her***," since "the contract permitted them to fire plaintiff 'at any time and for any reason.'" Rosely Br. at 1 (emphasis added). Indeed, Ms. Rosely even admits that "any claim by plaintiff for breach of the employment agreement ***would actually be frivolous.***" *Id.* (emphasis added). She admits, then, that she has no basis for any contractual claim for continued employment or damages whatsoever.

Recognizing this, Ms. Rosely offers a menu of three logically inconsistent claims related to her admittedly contractually proper termination. She now baldly asserts in conclusory fashion without support that she was terminated either because of (i) her alleged reports of so-called "violation of securities laws," (ii) her alleged report of purported harassment of another employee or, (iii) her age. But, given her own Complaint, Ms. Rosely's claims must be dismissed under applicable New Jersey caselaw.

With respect to Ms. Rosely's age discrimination claim, New Jersey law as interpreted by both state and federal courts in New Jersey requires dismissal for at least two independent reasons: (i) she fails to even allege that she was replaced by a younger employee; and (ii) she was both hired and fired while she was a member of the protected class. *See Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 302 (3d Cir. 2004) ("[T]he facts of this case demonstrate why a terminated plaintiff should not be able . . . to demonstrate a prima facie case of age discrimination without showing a difference in age between him or her and the replacement employee sufficient to support an inference of age discrimination."); *Young v. Hobart W. Grp.*, 897 A.2d 1063, 1070 (N.J. Super. App. Div. 2005) (New Jersey courts have "rejected age discrimination claims when a plaintiff was both hired and fired while a member of the protected age group").

Her retaliation claims must also be dismissed. Her allegations relating to purported

securities law violations took place approximately seven months prior to her termination, and her allegation concerning purported harassment of another employee took place two months prior to her termination. Here, where there is no temporal proximity based on the alleged chronology and no additional factual assertions beyond conclusory statements, controlling caselaw requires dismissal of her claims. *See Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) ("[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.").

Further, in this case, Ms. Rosely's own factual allegations *defeat* any claim that her termination had anything to do with her purported complaints. Ms. Rosely, herself, states that it is "a true statement" that she has "not alleged that any Defendant told her that she was being let go because of her complaints." Rosely Br. at 18. She then attempts to justify this lack of evidence by oddly asserting that "no manager with a functioning brain stem would tell an employee that an adverse employment action had unlawful motives." *Id.* But she alleges that the same manager gave her a positive evaluation after she had made her complaints but one month prior to her termination. Rosely Br. at 20. It makes no sense, however, that an employer would give an employee a positive review if that employer was seeking to create some sort of pretext to terminate the employee. Thus, Ms. Rosely's own allegations completely defeat her claims.

Finally, in arguing that she has stated claims for individual liability against Defendant Vivek Ramaswamy, Ms. Rosely simply recycles her conclusory allegations without providing any analysis or explanation showing why they are sufficient to meet the relevant legal standard. Her threadbare allegation that Defendant Ramaswamy told Strive employees that "we" had to downsize fails to raise a plausible inference that he was involved in the decision to terminate Ms. Rosely, much less that he was aware of any unlawful reasons for doing so.

For all these reasons, and as discussed herein, this case should be transferred to the Southern District of Ohio or, in the alternative, dismissed.

## ARGUMENT

### I. The Case Should Be Transferred Because The Forum-Selection Clause In Ms. Rosely's Employment Agreement Covers Her Claims.

The Court should transfer Ms. Rosely's action to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a) because, in her Employment Agreement, Ms. Rosely agreed to a forum-selection clause requiring that claims be brought in federal or state court in Ohio. As Defendants point out in their Opening Brief, courts in Ohio routinely interpret such forum-selection clauses broadly to encompass claims that are related to the agreement, as well as reject attempts by litigants to artfully plead their way out of a forum to which they previously agreed. Def.'s Br. at 10-13.

Rather than address how Ohio courts apply the clauses like the one in Ms. Rosely's contract, her opposition instead attempts to distract from the question by remarking that the contract language could have been written more broadly. Rosely Br. at 10-11. This misses the point. The Court must interpret the clause as Ms. Rosely agreed to it and, as Defendants explain in their Opening Brief, Ms. Rosely here seeks to enforce her contract by obtaining the very compensation it guaranteed. Her acknowledgement that it would be "frivolous" for her to do so directly under a breach of contract claim does not permit her to escape the reach of her forum-selection clause by raising alternative (though equally unsupported) claims. Indeed, courts in Ohio consistently reject attempts by plaintiffs to "artfully plead" around the reach of forum-selection clauses in circumstances like those here. As recognized by the court in *Bohl v. Hauke*, 906 N.E.2d 450 (Ohio App. 4th Dist. 2009), "[i]f forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful

pleading of claims," and "[t]herefore, 'even where a forum selection clause does not explicitly govern a given cause of action, courts will inquire into whether the other claims are sufficiently related to the claim that is specifically covered by the clause.'" *Id.* at 457 (quotation omitted). Ms. Rosely's claims here are "sufficiently related to the claim that is specifically covered by the clause," namely an action to enforce her employment agreement.

As explained in Defendants' Opening Brief, Ms. Rosely's forum-selection clause is substantially identical to the one in *Orthopaedic & Spine Ctr., LLC v. Henry*, No. 2:16-CV-0893, 2017 WL 6035234 (S.D. Ohio Dec. 6, 2017). There, the court found that a "forum selection clause naming the Franklin County Court of Common Pleas as the venue for any disputes arising out of the interpretation and enforcement of Henry's employment agreement with OSC" covered the plaintiff's extra-contractual claims, which were "substantially related to the contract claim in terms of factual and legal issues." *Id.* at *1, *5. Thus, Defendants have not asked the court to engage in "mental gymnastics" to find that transfer is required here. Rosely Br. at 13. They simply ask the Court to read the forum-selection clause broadly, as required by Ohio law, to encompass Ms. Rosely's attempt to obtain compensation pursuant to the terms of her employment agreement.

Ms. Rosely does not cite any cases that would call for a different result. Instead, she relies on cases standing for the unremarkable principle that "long-standing black-letter contract law … requires courts to apply unambiguous contract terms according to their plain language without further interpretation." Rosely Br. at 11 (citing cases). None of the cases she cites applying Ohio law, however, address a forum-selection clause, much less one denying transfer in circumstances similar to those here.[1] As noted above (and as discussed at length in Defendants' Opening Brief),

[1] *See Acuity, A Mut. Ins. Co. v. Progressive Specialty Ins. Co.*, __N.E. 3d __, 2023 WL 9234879 at *1 (Ohio 2023) (finding that an injured party was an "insured person" under an insurance

Ohio treats forum-selection clauses differently than other clauses, interpreting them broadly as a matter of public policy and rejecting attempts by litigants to plead their way around them. *See Varsity Gold, Inc. v. Koone*, No. 3:08 CV 528, 2009 WL 10690075 at *5 (N.D. Ohio Jan. 20, 2009) ("Plaintiff's tort claims clearly relate to the SRA [Sales Representative Agreement], and the mere fact that Plaintiff's claims as alleged do not technically sound in contract does not take them without the scope of the SRA's forum selection clause.").

For the same reason, Ms. Rosely also fails to meaningfully distinguish the cases cited by Defendants. Rosely Br. at 14-17. She simply argues that most of those cases are irrelevant because she "does not have (and has not brought) a claim for breach of contract." *Id.* at 14; *see also id.* at 15-16. But, as discussed above, courts in Ohio routinely find that forum-selection clauses like Ms. Rosely's cover extra-contractual claims that are related to the terms of a contract. This court should reject Ms. Rosely's attempt to artfully plead around a claim she admits is "frivolous."

Ms. Rosely takes a different tack in distinguishing *Varsity Gold*, where the court expressly found that the forum-selection clause covered a plaintiff's tort claims despite the absence of any breach of contract claim. There, Ms. Rosley argues, the forum-selection clause at issue had broader language than the clause in her own agreement because it covered claims that were "related to this Agreement." Rosely Br. at 17 (citing *Varsity Gold*, 2009 WL 10690075 at *2). Ms. Rosely appears to suggest that the clause at issue in that case expressly covered the tort claims because

---

policy); *Bohlen v. Anadarko E & P Onshore, L.L.C.*, 80 N.E. 3d 468, 471-476 (Ohio 2017) (considering a "delay-rental" clause in an oil and gas lease); *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm'n*, 954 N.E. 2d 104, 109-110 (Ohio 2011) (reviewing contract termination language in agreements for the sale of electricity); *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E. 2d 285, 290-298 (Ohio 2011) (interpreting "most-favored-nation" clause in a contract for the sale of electricity); *St. Marys v. Auglaize Cnty. Bd. of Commrs.*, 875 N.E. 2d 561, 566 (Ohio 2007) (interpreting contract termination language in a waste-disposal agreement); *In re All Kelley & Ferraro Asbestos Cases*, 821 N.E. 2d 159, 165-171 (Ohio 2004) (considering whether a settlement agreement provides for joint and several liability).

they were "related to" the agreement, whereas here the forum-selection clause does not expressly cover her discrimination claims. But the court in *Varsity Gold* did ***not*** find that the forum-selection clause expressly covered the tort claims at issue there. To the contrary, the court highlighted that the defendants themselves recognized that the forum-selection clause did "not facially apply to tort actions." *Varsity Gold*, 2009 WL 10690075 at *5. Nevertheless, the court still found that the tort claims fell within the scope of the clause because "public policy requires that [forum-selection clauses] not be defeated by artful pleading of claims." *Id*.

Finally, Ms. Rosely's attempt to draw a distinction between liability and damages to suggest transfer is unwarranted is unavailing. Rosely Br. at 13. Ms. Rosely does not (and cannot) dispute that she seeks compensation pursuant to the terms of her employment agreement. *See, e.g., Chakravarti v. Pegasus Consulting Grp., Inc.*, 923 A.2d 233, 238 (N.J. Super. App. Div. 2007) (finding that plaintiff's compensatory damages received after prevailing on her gender discrimination claim "subsumed" the relief sought by her alternative breach of contract and discrimination claims). Indeed, she would not be entitled to her compensation but for the specific terms of her employment agreement.

For this reason, Ms. Rosely's attempts to liken her claims to ERISA preemption cases are inapposite. Rosely Br. at 13. In those cases, courts have held that ERISA does not preempt state contract claims merely because documents extrinsic to the underlying employment contract (*i.e.*, retirement plans) *affect* the amount of damages. For example, in *Funkhouser v. Wells Fargo Bank, N.A.*, 289 F.3d 1137, 1143 (9th Cir. 2002) (declined to extend by *Newton v. S. Jersey Paper Products Co., Inc.*, No. 1:19-CV-17289 (NLH/KMW), 2020 WL 7396258 (D. N.J. Dec. 17, 2020)), the court rejected an argument made by Wells Fargo that an employee's breach-of-contract claim was preempted because a court would have to refer to an ERISA program to determine an

offset in damages. Rosely Br. at 13-14 (citing *Funkhouser*). Setting aside that no such pre-emption arguments are being made here, Ms. Rosely gets things backwards. In *Funkhouser*, the court rejected an argument relating to an *offset* to damages that flowed from a breach of contract. Here, by contrast, the compensatory damages sought by Ms. Rosely are lost wages, the *same* damages she would be entitled to under a breach of contract claim.

For all of these reasons, this Court should follow Ohio law in interpreting the forum-selection clause broadly and transferring this matter to the Southern District of Ohio.

**II. In The Alternative, The Court Should Dismiss The Case Because Ms. Rosely Fails To State Claims Under CEPA Or NJLAD.**

Having acknowledged that Defendants had the right "to fire plaintiff 'at any time and for any reason'" pursuant to her employment agreement, Rosely Br. at 1, Ms. Rosely alleges multiple alternative and distinct reasons for her dismissal. On the one hand, she claims she was terminated in retaliation for purportedly making complaints—complaints that, themselves, are raised in the alternative as relating to either alleged securities violations or the alleged sexual harassment of a co-worker. Barring that, she claims she was terminated because of her age. She also claims that Defendant Vivek Ramaswamy is individually liable for her termination. None of these alternative theories pass muster.

**A. Ms. Rosely Fails To Allege That Her Termination Was Caused By Her Complaints.**

As argued in Defendants' Opening Brief, the Court should dismiss Ms. Rosely's CEPA and NJLAD retaliation claims because she cannot allege a prima facie case for retaliation under either law. Instead, she alleges only that she engaged in protected activity and then—months later—she was let go. As Defendants have explained, courts routinely dismiss claims that rely solely on temporal proximity in cases where the timing was significantly less than that alleged here. *See* Defs.' Br. at 17-18.

In response, Ms. Rosely concedes that she has no direct evidence showing causation. Rosely Br. at 18 ("[D]efendants state that plaintiff 'does not allege[] that any Defendant told her that she was being let go because of her complaints.' This is a true statement."). Instead, she offers two arguments. First, she claims that the complaint adequately alleges circumstantial evidence plausibly stating that her termination was caused by her complaints. Second, she claims that New Jersey law is "more hospitable and flexible" when it comes to assessing temporal proximity in retaliation cases. Neither of her arguments holds merit.

*First,* Ms. Rosely claims that she has "offered several forms of circumstantial evidence supporting the inference of retaliatory causation." Rosely Br. at 19. She then points to the following five allegations:

- "Defendants Frericks and Ramaswamy continued to pressure Mr. Rosely and Mr. Nye to violate securities laws and continued to violate securities laws themselves despite the repeated objections posed by Ms. Rosely and Mr. Nye." *Id.*

- Ms. Rosely and Mr. Nye "were the only two employees who objected to the securities law violations, and they were both dismissed on the same day." *Id.*

- "[D]efendants retained [the] Co-Head of Institutional Sales and Distribution, who did *not* object to the securities law violations." *Id.*

- "[N]o one acting on behalf of defendant Strive did anything to investigate or remediate" her complaints about another employee being harassed and she was told to "mind her own business when she raised this issue." *Id.*

- "Finally, [D]efendants fired Ms. Rosely just two months after she complained about … sexual harassment and only one month after she received a positive written performance evaluation." *Id.* at 20.

As an initial matter, the allegation above suggesting that Ms. Rosely's Co-Head of Institutional Sales took a position one way or another on any purported securities violations is

nowhere in the Complaint.[2] That Ms. Rosely sees the need to change the factual allegations in her Complaint to avoid Defendants' arguments for dismissal—a tactic not permissible under the Federal Rules—proves Defendants' point. If anything, her own allegations *undercut* her claim, given claims that she received a positive performance evaluation one month *after* she complained about unlawful harassment.

Setting that aside, these allegations fail to reach the level of "timing plus other evidence" to find that the "pleaded facts suggest retaliatory motive." *Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014). There are no allegations suggesting a "pattern of antagonism" or "inconsistent explanations from the employer" that would make it plausible that Ms. Rosely's termination was caused by her complaints. *See, e.g., Marley v. Postmaster Gen. of United States*, 747 F. App'x 901, 903 (3d Cir. 2018) ("Moreover, in the absence of other summary judgment evidence of a causal connection, such as a pattern of antagonism, or inconsistent explanations from the employer, we agree with the District Court's overall conclusion that Marley did not make out a prima facie case of retaliation.") (internal citations omitted).

Instead, to support her NJLAD claim, Ms. Rosely only alleges that she made a complaint and was purportedly told to "mind her own business." Similarly, to support her CEPA claim, Ms. Rosely simply points to the alleged actions that gave rise to her complaints, namely Defendants Ramaswamy and Frericks "pressuring" her and her colleague to violate the law, and her eventual termination. These allegations simply do not raise a plausible inference that she was terminated *because* she complained. There is no indication anyone said anything to her about these complaints after she initially made them.

---

[2] *Compare* Rosely Br. at 19 ("Also notable, defendants retained Ms. Rosely's Co-Head of Institutional Sales and Distribution, who did *not* object to the securities law violations.") (citing Compl. ¶ 17) *with* Compl. ¶ 17 ("Ms. Rosely is older than her Co-Head, who was retained.").

*Second,* Ms. Rosely argues that the temporal proximity here is sufficient to establish the causal link, noting that "defendants do not cite a single New Jersey state court decision regarding temporal proximity as support for plaintiff's New Jersey state law retaliation claims" and arguing that "New Jersey state courts have evinced a much more hospitable and flexible approach to temporal proximity in retaliation cases." Rosely Br. at 20.

As an initial matter, all of the federal cases cited by Defendants rely on the applicable burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1083) that New Jersey courts apply to CEPA and NJLAD claims. Indeed, many of the cases cited addressed these very claims. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 116 (3d Cir. 2003) (considering CEPA and NJLAD retaliation claims); *Escanio v. United Parcel Serv.*, 538 F. App'x 195, 200 (3d Cir. 2013) (considering an NJLAD retaliation claim); *Reganato v. Appliance Replacement Inc.*, No. CV 15-6164 (RMB/JS), 2017 WL 747463, at *7 (D.N.J. Feb. 27, 2017), *aff'd*, 727 F. App'x 40 (3d Cir. 2018) (same); *Taylor v. Lincare, Inc.*, No. CV 15-6284 (RMB/JS), 2016 WL 3849852, at *1 (D.N.J. July 15, 2016) (same). Ms. Rosely offers no indication that these federal cases (including at least one precedential Third Circuit case) were wrongly decided or should be distinguished.

At the same time, Ms. Rosely fails to demonstrate that New Jersey state courts do, in fact, "evince a much more hospitable and flexible approach to temporal proximity in retaliation cases." In support of her assertion, Ms. Rosely cites a single case, *Romano v. Brown & Williamson Tobacco Corp.*, 665 A.2d 1139, 1140 (N.J. Super. App. Div. 1995), in which temporal proximity was found even though ten years had lapsed between a plaintiff complaining about the sexual harassment of a co-worker and the plaintiff's dismissal. Rosely Br. at 20-21. But *Romano* was not a case that rested on temporal proximity alone. Rather, the court stated clearly, "we find no

case that stands for the proposition *that proximity is the only circumstance* that justifies an inference of causal connection." *Romano*, 655 A.2d at 1143 (emphasis added).

In other words, *Romano* is actually *consistent* with the federal cases cited by Defendants, which hold that evidence (or allegations) of temporal proximity must be unusually close in the absence of other evidence (or allegations). *See Thomas*, 351 F.3d at 114 (3d Cir. 2003) ("In cases such as this one where 'the temporal proximity is not so close as to be unduly suggestive,' we have recognized that 'timing plus other evidence may be an appropriate test . . . .'") (internal citation omitted). As discussed above and in Defendants' Opening Brief, no such other evidence is alleged.

Because Ms. Rosely fails to allege facts that would establish a causal link between any alleged CEPA or NJLAD protected activity and her eventual termination, her retaliation claims must be dismissed.

### B. Ms. Rosely Fails To Allege Facts Showing That Her Termination Was Because Of Age.

Ms. Rosely's last alternative theory for her termination is that she was fired because of her age. As Defendants explain in their Opening Brief, however, her NJLAD age discrimination claim should be dismissed because the facts as alleged fail to show that age was a motivating factor for her termination. That is so for two reasons. First, she does not allege that she was replaced by anyone, much less someone younger. Second, she was hired and fired while a member of the protected class—and all within seven months.

In her Opposition, Ms. Rosely does not respond to Defendants' second argument, even though New Jersey courts have "rejected age discrimination claims when a plaintiff was both hired and fired while a member of the protected age group." *Young v. Hobart W. Grp.*, 897 A.2d 1063, 1070 (N.J. Super. App. Div. 2005); *see also* Def.'s Br. at 19-20 (citing cases). This concession provides an independent basis for dismissal.

Instead, Ms. Rosely suggests that "Defendants are simply wrong as a matter of law that an age discrimination plaintiff must prove replacement by a sufficiently younger person to prevail under the LAD," and that "New Jersey courts have also held specifically that only 'reverse' age discrimination plaintiffs (those alleging differential treatment based on their youth) need to show replacement by someone sufficiently older," *id.* at 22. Thus, Ms. Rosely argues that Defendants are wrong to rely on *Bergen Cmty. Bank v. Sisler*, 723 A.2d 944 (N.J. 1999). Rosely Br. at 21–22.

While Ms. Rosely is correct that some lower New Jersey courts have narrowly construed *Sisler* to apply only to reverse discrimination claims, the Third Circuit has expressly rejected those interpretations. In *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 302 (3d Cir. 2004), cited in Defendants' Opening Brief, the court considered cases in which "the Appellate Division of the Superior Court of New Jersey, the intermediate state court of appeals, addressed the application of *Sisler* to cases involving allegations of traditional age discrimination brought by older employees." *Id.* The Third Circuit explained that, in those cases, "the Appellate Division declined to adopt the formulation of the fourth element of the prima facie case in the language we have quoted from *Sisler* regarding age discrimination cases, holding instead that the Supreme Court of New Jersey's analysis in that case was limited to cases involving allegations of reverse discrimination." *Id.* The Third Circuit rejected that view, ultimately holding:

> To us it is clear from *Sisler* that when the Supreme Court of New Jersey set out the fourth element of the *McDonnell Douglas* prima facie case framework in an age discrimination case it regarded that standard as applicable in both traditional and reverse age discrimination cases, the difference being that in a traditional case the replacement employee must be sufficiently younger than the replaced employee and in a *Sisler* reverse discrimination situation the replacement employee must be sufficiently older than the replaced employee.

*Id.* at 303.

The Third Circuit in *Monaco* also found that following the logic of cases rejecting *Sisler* would "lead to an absurd result." *Id.* at 304. That is because, unlike the federal Age Discrimination

in Employment Act, the NJLAD does not have a 40-year-old age threshold requirement before one may bring a claim. As a result, failing to require plaintiffs to demonstrate that they were replaced by a significantly younger (or older) employee would mean that "practically every terminated employee would be able to establish a prima facie case of age discrimination." *Id.*

Ms. Rosely does not dispute that she fails to allege she was replaced by a younger employee. Her claim should be dismissed.

**C. Ms. Rosely Fails To Allege That Defendant Ramaswamy Participated In Any Unlawful Conduct.**

Finally, Ms. Rosely's NJLAD and CEPA claims should be dismissed against Defendant Ramaswamy for the additional reason that the Complaint fails to allege that he was in any way involved in her termination. Instead, the Complaint makes only conclusory allegations both that Mr. Ramaswamy was involved in the decision to terminate her and that he did so knowing that she had made complaints about unlawful activity.

Ms. Rosely responds by suggesting that the allegations of the Complaint are sufficient to state a claim for individual liability.[3] Rosely Br. at 23-27. But she fails to demonstrate how her barebones allegations are sufficient to state a claim here. Instead, she devotes four pages of her Opposition to explaining the standards under which courts will *generally* find individuals liable, but she fails to show why those standards would support a finding in *this* case. Instead, she simply restates the conclusory assertions of her Complaint. *See, e.g., id.* at 24 ("Here, defendant Ramaswamy publicly admitted to the remaining Strive workforce the day after Ms. Rosely and her

[3] Ms. Rosely also suggests that Defendants fail to address the standard for individual liability under CEPA. Rosely Br. at 23-24. Defendants' Opening Brief cited the relevant legal standard on pages 20–21.

three colleagues were fired that he had participated in that decision.").[4]

As explained in Defendants' Opening Brief, these conclusory allegations fall far short of raising a plausible inference that Mr. Ramaswamy was "generally aware" of unlawful activity or that he "took a retaliatory adverse employment action against [Ms. Rosely] that was causally linked" with her protected activity. Even crediting her suggestion that a general statement that "[w]e had to do this," Compl. ¶ 17, indicates that Mr. Ramaswamy was personally involved in the decision to terminate a *group* of Strive employees, Ms. Rosely does not allege that Mr. Ramaswamy took part in the decision to *individually* fire her. Nor does she allege that he was aware of any alleged complaints about securities violations. Nor does she allege that he was aware of any alleged complaints about sexual harassment. And—even if she had alleged those things—she still fails to allege any facts that would indicate he was motivated to terminate her for those reasons. *See McKenna v. Verint Ams. Inc.*, No. CV 22-02370 (FLW), 2022 WL 3211422, at *6 (D.N.J. Aug. 9, 2022) (granting motion to dismiss where "Plaintiff merely alleges, in a conclusory manner, that Zember … created pretextual reasons to terminate Plaintiff's employment.").

For these reasons, should the Court decline to dismiss all Defendants for the other reasons set forth above, it should nevertheless dismiss Defendant Ramaswamy.

**CONCLUSION**

For the foregoing reasons, Defendants Strive Asset Management, Anson Frericks, and Vivek Ramaswamy respectfully request that the Court transfer the matter to the United States District Court for the Southern District of Ohio or, in the alternative, dismiss the Complaint.

[4] *See also* Rosely Br. at 25 ("Defendant Ramaswamy's public admission to the remaining Strive workforce the day after Ms. Rosely and her three colleagues were fired that he had participated in that decision supports such a theory of individual liability."); *id.* at 26 (similar); *id.* at 26-27 similar).

Dated: February 13, 2024

By: /s/ John V. Coghlan

John V. Coghlan
TORRIDON LAW PLLC
1155 F Street, NW, Suite 750
Washington, DC 20004
Telephone: (202) 249-6900
Facsimile: (202) 249-6899
jcoghlan@torridonlaw.com

Brett D. Katz
ELLIS GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
bkatz@egcfirm.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system and thereby served upon all counsel of record.

/s/ John V. Coghlan
John V. Coghlan