**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOYCE ROSELY,**<br><br>**Plaintiff,**<br><br>**STRIVE ASSET MANAGEMENT, LLC, ANSON FRERICKS, VIVEK RAMASWAMY,**<br><br>**Defendants.** | **Civil Action No. 23-20772 (JXN) (CLW)**<br><br>**REPORT AND RECOMMENDATION** |

**CATHY L. WALDOR, U.S.M.J.**

This comes before the Court upon Defendants' motion to transfer this matter pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6). The District Court referred Defendants' application to the undersigned for a report and recommendation. In accordance with Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court addresses Defendants' motion without oral argument. Upon careful consideration of the record for this matter, and for good cause shown, and for the reasons discussed herein, the Court respectfully recommends that Defendants' motion be **GRANTED IN PART AND DENIED IN PART.**

## I. RELEVANT BACKGROUND[1] AND PROCEDURAL HISTORY

On August 2, 2022, Plaintiff Joyce Rosely began working for Defendant Strive Asset Management, LLC in the role of Executive Vice President and Co-Head of Institutional Sales and Distribution. (Compl. ¶¶ 1, 5, ECF No. 1-1). On that date, Plaintiff and Strive entered into an Employment Agreement that governed the terms of their relationship. (*Generally* Employment Agreement, Decl of John v. Coghlan at Ex. 2, ECF No. 6-3). Among other things, the Employment Agreement set forth Plaintiff's job duties, (*id.* at § 2), compensation, (*id.* at § 3), and the process and potential grounds for her terminating her employment. (*Id.* § 4). The Employment Agreement also specified that it would "be construed in accordance with the laws of the State of Ohio", and that "[a]ny action or proceeding by either of the parties to enforce [it] must be brought only in a state or federal court located in the State of Ohio." (*Id.* § 11.5). Plaintiff worked for Strive remotely from her home in Westfield, New Jersey. (Compl. ¶ 1, ECF No. 1-1).

Defendants Anson Frericks and Vivek Ramaswamy are co-founders and co-owners of Defendant Strive. (*Id.* ¶¶ 3-4). Plaintiff alleges that both exercised "supervisory authority" over her and, in that capacity, both directed her to "violate applicable securities laws". (*Id.*). Plaintiff identified five specific examples of those defendants' "unlawful demands". (*Id.* ¶ 8). Plaintiff and another Strive employee, Jeff Nye, "repeatedly objected" to those demands, as well as Frericks' and Ramaswamy's own allegedly unlawful securities sale activities (i.e., unlicensed sales activities via e-mail and social media), during conversations with those defendants. (*Id.* ¶ 9).

[1] Defendants' motion to transfer is focused on the language of Plaintiff's employment agreement with Defendant Strive Asset Management, LLC. The facts relevant to that application are not in legitimate dispute. With regard to Defendants' application to dismiss for failure to state a claim, the Court takes Plaintiff's factual allegations as true. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

Plaintiff also alleges that, in January 2023, she learned from Mr. Nye that a new employee "had disclosed to Mr. Nye that she was being pursued romantically by [Strive's Chief Operating Officer] in an aggressive manner." (*Id.* ¶ 10). Plaintiff "met with the [Strive's] Head of People Strategy Laura Brady and expressed concern that [the Chief Operating Officer's] conduct was creating potential legal liability for [the company]." (*Id.* ¶ 11). Plaintiff alleges that, to her knowledge, "neither Brady nor anyone else acting on behalf of the company did anything to deter [the executive] from pressuring a newly-hired subordinate into a sexual relationship." (*Id.*). "When [Plaintiff] brought the issue up with [D]efendant Frericks, his only response was that it was none of his business." (*Id.* ¶ 12). Plaintiff "even went so far as to confront [the Chief Operating Officer] directly" about the situation, and he told her to "mind her own business." (*Id.* ¶ 13).

"On or about March 21, 2023, [D]efendant Frericks and Brady met with [Plaintiff] and summarily dismissed her with no prior notice or warning. The only explanation that they provided . . . was that the company was 'reorganizing', and as a result there was 'no longer a position' for her." (*Id.* ¶ 14). "Defendant Frericks also fired Mr. Nye, Senior Vice President and Regional Sales Director John Phillips, and Senior Vice President and Regional Sales Director J.P. Towey that day." (*Id.* ¶ 15). Plaintiff (age 52), Mr. Nye (age 54), and Mr. Phillips (age 53) "were the only Strive employees aged 50 or older at the time." (*Id.* ¶ 16). Plaintiff alleges that she was older than her Co-Head [of Institutional Sales and Distribution], who was retained; Mr. Phillips was the oldest Regional Sales Director; and Mr. Towey (age 40) was let go, while the two Regional Sales Directors in their thirties were retained. (Mr. Nye had no counterparts or peers.)" (*Id.* ¶ 17). Plaintiff further alleges that Defendant Frericks, her immediate supervisor, is "approximately 13 years younger than [herself] and 15 years younger than Mr. Nye." (*Id.* ¶ 18). Finally, Plaintiff alleges that, the day after Strive terminated her employment, Defendant Ramaswamy came to the

company's office in Dublin, Ohio "in person to reassure employees about their job security, stating '*we* had to do this' in reference to the dismissals, indicating that he participated in the firing decisions." (*Id.* ¶ 19) (emphasis in original).

Plaintiff commenced this matter by filing a Complaint in the Superior Court of New Jersey on or about August 8, 2023, asserting multiple claims under the New Jersey Conscientious Employee Protection Act and the New Jersey Law Against Discrimination. (*Generally id.*). Defendants removed the case to the United States District Court for the District of New Jersey on September 28, 2023. (ECF No. 1). On January 9, 2024, Defendants filed a motion asking that the District Court transfer this matter to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). (*Generally* ECF No. 6). In the alternative, Defendants request that the Court dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def. Br. at 15-21, ECF No. 6-4). That motion is fully briefed and ripe for resolution. (ECF Nos. 9-10).

## II. LEGAL DISCUSSION

### a. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

Defendants argue that the Employment Agreement contains a forum selection clause through which the parties agreed to litigate all of Plaintiff's claims in Ohio, and that the District Court should enforce that provision by transferring this matter to the United State District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). (Def. Br. at 6-15, ECF No. 6-4). That statute "states that '[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59, 134 S. Ct. 568, 579, 187 L. Ed. 2d 487

(2013) (quoting 28 U.S.C. § 1404(a)). Interpreting the provision's language regarding party consent, the Supreme Court has observed that Section 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Id.* at 59.

"Typically, in a case where there is no forum selection clause, a court balances 'the three enumerated factors in § 1404(a) (convenience of the parties, convenience of the witnesses, or interests of justice)' along with a non-exhaustive list of various private and public interest factors." *Beaumont v. Vanguard Logistics Servs. (USA), Inc.*, 615 F. Supp. 3d 253, 259 (D.N.J. 2022) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Identifying several commonly cited factors, the United States Court of Appeals for the Third Circuit has written:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion, id.; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80 (citations omitted).

As the Supreme Court explained in *Atlantic Marine*, however, "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine Const. Co.*, 571 U.S. at 63. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*

"Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 64. Instead, "[a] court . . . must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* Here, while the parties agree that the Employment Agreement contains a forum selection clause, they dispute whether that provision applies to Plaintiff's claims in this case. (*Compare* Def. Br. at 10-13, ECF No. 6-4 *with* Pl. Br. at 10-17, ECF No. 9). The Court must resolve that issue at the outset of its analysis, as its determination concerning the forum selection clause will fundamentally alter the balance of the Section 1404(a) discussion. *Beaumont*, 615 F. Supp. 3d at 260 ("Because the existence of a valid forum selection clause changes the § 1404(a) calculus, the Court must first examine whether the forum selection clause at issue is enforceable.").

The disputed forum selection clause states, in relevant part: "Any action or proceeding by either of the parties to enforce this Agreement must be brought only in a state or federal court located in the state of Ohio. The parties hereby irrevocably submit to exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue." (Employment Agreement § 11.5, Decl of John v. Coghlan at Ex. 2, ECF No. 6-3). Plaintiff does not suggest that the forum selection clause is contractually invalid or otherwise unenforceable. (*Generally* Pl. Br., ECF No. 9) Rather, Plaintiff argues that the clause, on its face, is limited to enforcement of the Employment Agreement itself and does not apply to the statutory claims she asserts in this case. (*Id.* at 10-17). This Court agrees.

"A scope-based challenge to the applicability of a forum-selection clause presents a quintessential question of contract interpretation." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 98 (3d Cir. 2018). The United States Court of Appeals for the Third Circuit has "stressed that 'whether or not a forum selection clause applies' to a particular dispute 'depends on what the specific clause at issue says.'" *Id.* (citing *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997); *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180-81 (3d Cir. 2017)). The Employment Agreement's choice of law provision requires the Court to interpret the forum selection clause under Ohio law. (Employment Agreement § 11.5, Decl of John v. Coghlan at Ex. 2, ECF No. 6-3).[2] Summarizing Ohio contract law, the United States Court of Appeals for the Sixth Circuit wrote:

> In interpreting a contract, "the principal objective is to determine the intention of the parties" and give effect to that intent. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 714 N.E.2d 898, 900 (1999). The first step in ascertaining the parties' intent is to look at the plain meaning of the words in the contract. If the language is clear and unambiguous, contract terms are given their plain and ordinary meaning. *Id.* at 901. A contract "is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261 (2003).

*SHH Holdings, LLC v. Allied World Specialty Ins. Co.*, 65 F.4th 830, 837 (6th Cir. 2023) (citations in original). The Supreme Court of Ohio recently reiterated that, for all contracts, "'[a] court has an obligation to give plain language its ordinary meaning and to refrain from rewriting the contractual agreement of the parties.'" *Acuity, A Mut. Ins. Co. v. Progressive Specialty Ins. Co.*, 229 N.E.3d 1, 4 (OH 2023) (quoting *Miller v. Marrocco*, 28 Ohio St.3d 438, 439, 504 N.E.2d 67 (OH 1986)). The Court is nonetheless mindful of the case law directing courts to read forum

[2] The parties agree on this point. (Def. Br. at 8-10, ECF No. 6-4; Pl. Br. at 11, ECF No. 9).

selection clauses liberally, such that plaintiffs are unable to circumvent them via "artful pleading." *Bohl v. Hauke*, 906 N.E.2d 450 (Ohio App. 4th Dist. 2009).

The Employment Agreement's forum selection clause is unambiguously limited to actions "to enforce [the] Agreement" itself. (Employment Agreement § 11.5, Decl of John v. Coghlan at Ex. 2, ECF No. 6-3). The parties opted against using more expansive language, such as that applying the provision to all actions "related to" or "arising from" the Agreement or Plaintiff's employment in general. Plaintiff has not asserted a claim for breach of contract, or otherwise sought to litigate her rights under that contract using alternative, "artful" causes of action. (*See generally* Compl., ECF No. 1-1). To the contrary, Plaintiff has disclaimed any contractual violation. (Pl. Br. at 10, ECF No. 9). To resolve Plaintiff's claims, a court will have to determine whether Defendants' alleged actions violated *New Jersey law*, regardless of anything contained in the Employment Agreement. Indeed, the Court's analysis regarding Defendant's liability for those violations would be the same even if the Employment Agreement did not exist. To apply the forum selection clause in these circumstances, the Court would effectively be re-writing that provision and expanding it significantly. It may not do so under Ohio law. *Acuity, A Mut. Ins. Co.*, 229 N.E.3d at 4. The Court has considered the case law Defendants cited on this point, (Def. Br. at 10-13, ECF No. 6-4), and does not find it persuasive given the facts and claims at issue in this case.

Nor is the Court persuaded by Defendants' argument that it would have to "enforce" the Employment Agreement when awarding Plaintiff compensatory damages in the event she prevails on her statutory claims (i.e., because those damages would theoretically include lost compensation to which Plaintiff would not be entitled but-for the Employment Agreement). (Def. Br. at 10-11, ECF No. 6-4). Referencing an agreement for its informational value is not the same as enforcing

it. Even if the Court were to ultimately adopt a damages calculation based, in part, on the compensation schedule described in the Employment Agreement, awarding damages on Plaintiff's statutory claims would not amount to "enforcing" the Agreement. Rather, the Court would be enforcing New Jersey law. To find otherwise would require the Court to apply *every* forum selection provision contained in an employment agreement – regardless of its actual wording – to essentially *every* employment action involving a signatory to that agreement – regardless of its nature. Defendants, who bear the burden of proof on their motion to transfer, *Jumara*, 55 F.3d at 879, have not cited any authority mandating such a bright-line approach. Indeed, disregarding both the plain language of a contract and the parties' intent, as evinced by that language, would run directly contrary to Ohio law. For these reasons, the Court finds that the forum selection clause does not apply to Plaintiff's claims in this case.

Without the benefit of a forum selection clause, the Court is left with a traditional Section 1404(a) transfer analysis. As Defendants' argument presumes that the clause is both valid and applicable to Plaintiff's claims, they have not analyzed any of the "private" interests relevant to a potential transfer. (*Generally* Def. Br., ECF No. 6-4). While Defendants have discussed the "public" interest factors in their briefing, the Court notes that those factors, standing alone, are "rarely" dispositive of a motion to transfer. *Atl. Marine Const. Co.*, 571 U.S. at 64. Based on this motion record, the Court finds that Defendants have not met their burden of establishing that transfer would be appropriate under Section 1404(a) and recommends that the District Court deny that portion of their motion.

**b. <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>**

As an alternative to transfer, Defendants argue that the Court should dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as it fails to state a valid claim for

relief. "In considering a Rule 12(b)(6) motion, the court assumes the truth of the facts alleged and draws all reasonable inferences in favor of the non-movant." *PF2 EIS LLC v. MHA LLC*, No. 21-cv-3673 (JXN), 2023 WL 4197471, at *2 (D.N.J. June 27, 2023) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)); *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) ("'In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law.'") (quoting *Gould Elec. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir.2000)). "Ultimately, the allegations must be 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *PF2 EIS LLC,* 2023 WL 4197471, at *2 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Rather, the facts alleged must support a plausible claim for relief." (*Id.*) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plainly, the complaint 'must do more than allege the plaintiff's entitlement to relief'—it 'has to "show" such an entitlement with its facts.'" *PF2 EIS LLC,* 2023 WL 4197471, at *2 (*quoting Fowler*, 578 F.3d 203 at 211). "The defendant bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750. Given the fact-intensive nature of the inquiry, the Court considers Defendants' arguments regarding each category of Plaintiff's claims in turn.

**i. <u>Plaintiff's Retaliation Claims</u>**

Plaintiff alleges that, in response to her refusal to violate securities laws, Defendants unlawfully retaliated against her in violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.* (“CEPA”) (First Count) (Compl. ¶¶ 23-25, ECF No. 1-

1). Plaintiff further alleges that Defendants engaged in similar retaliation in connection with her complaints that a Strive executive engaged in the ongoing sexual harassment of a subordinate employee, and that such retaliation violated the New Jersey Law Against Discrimination (Second Count). (*Id.* ¶¶ 26-28). Defendants argue that these claims are ultimately "governed by the burden-shifting framework for Title VII claims set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03 (1973)", (Def. Br. at 16, ECF No. 6-4), and this Court agrees. *See, e.g.*, *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 854 (D.N.J. 2019) ("The framework for analyzing CEPA claims is analogous to FLSA and NJLAD claims, which use the *McDonnell Douglas* burden-shifting framework. Therefore, the plaintiff must meet her initial burden by establishing a prima face case.") (citations omitted); *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) ("All retaliation and discrimination claims brought under Title VII and the NJLAD, including those based on sex, race, and disability, which rely on circumstantial evidence, are controlled by the three-step burden-shifting framework set forth in [*McDonnell Douglas*]."). Under that framework, the Court must first determine whether Plaintiff has established a prima facie retaliation claim. To do so, "a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action. *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006)).

Defendants contend that Plaintiff has failed to establish a prima facie case of retaliation under either CEPA or the NJLAD, as she has not sufficiently alleged a causal connection between

her protected activities and eventual termination. (Def. Br. at 16-18, ECF No. 6-4).[3] As they arise from separate events, the Court will consider Plaintiff's CEPA and NJLAD retaliation claims separately. Regarding the former, Plaintiff alleges that she repeatedly rejected her supervisors' directives to violate securities laws, that she communicated her concerns to those supervisors, and that she and another similarly objecting employee were later fired. (Compl. ¶¶ 8-9, 14-15, ECF No. 1-1). From those allegations, the Court can draw a reasonable inference that Defendants fired Plaintiff in retaliation for her complaints. While Defendants argue that Plaintiff's retaliation claims will ultimately fail for lack of evidentiary support (i.e., no direct admission of retaliation; inadequate temporal proximity between the alleged protected activity and retaliation), (Def. Br. at 17-18, ECF No. 6-4), Plaintiff is not obligated to definitively prove her claims at the pleadings stage, without the benefit of fact discovery. The cases Defendants cite on this issue do not compel a different result, as each involved decisions made at the *summary judgment* phase, *Watson v. Rozum*, 834 F.3d 417 (3d Cir. 2016); *Escanio v. United Parcel Serv.*, 538 F. App'x 195 (3d Cir. 2013); *Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003); *Reganato v. Appliance Replacement Inc.*, No. 15-cv-6164 (RMB), 2017 WL 747463 (D.N.J. Feb. 27, 2017), aff'd, 727 F. App'x 40 (3d Cir. 2018), or involved long delays between the complaint/adverse action with no other alleged indicia of retaliation. *Blakney v. City of Phila.*, 559 F. App'x 183, 186-88 (3d Cir. 2014) (affirming dismissal of retaliation claim where there was a three year delay and no other allegations suggesting retaliation); *Taylor v. Lincare, Inc.*, No. 15-CV-6284 (RMB), 2016 WL 3849852, at *7 (D.N.J. July 15, 2016) (dismissing retaliation claim under Rule 12(b)(6) for multiple reasons, including that the passage of five weeks between the plaintiff's request for

---

[3] Defendants do not suggest that Plaintiff failed to allege that she engaged in a protected activity or that she suffered an adverse employment action. (*Generally* Def. Br. at 6-4).

accommodation and the adverse employment action, standing alone, was insufficient to establish causation). Here, while there was a sizable gap between Plaintiff's complaints and Defendants' alleged adverse action, the Court finds that Plaintiff's allegation that Defendants also simultaneously fired another employee who engaged in the same activity sufficiently bolsters her claim. In short, taking Plaintiff's factual allegations as true, and drawing reasonable inferences based on those allegations, this Court finds that Plaintiff has demonstrated a plausible entitlement to relief on her CEPA retaliation claim.

The Court reaches a different result when considering Plaintiff's NJLAD retaliation claim. Plaintiff alleges that she reported what she perceived to be a Strive executive's sexual harassment to the company's Head of People Strategy, and that she later raised the same concerns to both her direct supervisor and the alleged harasser himself, only to be rebuffed in both instances. (*Id.* ¶¶ 11-13). Strive terminated her employment approximately two months after she made her initial complaint, and an unspecified amount of time after she complained to her supervisor and the executive in question. (*Id.* ¶ 14). Unlike with her CEPA claim, Plaintiff has not alleged any corroborating facts to support her NJLAD retaliation claim and instead depends entirely on the temporal connection between her complaint and Defendants' adverse employment action. (Compl. ¶ 22, ECF No. 101) ("[Defendants terminated Ms. Rosely's employment just two months or so after she had complained that [a Strive executive] was sexually harassing [a subordinate employee]."). Courts in this District have found such allegations lacking in cases featuring significantly shorter temporal gaps. *E.g.*, *Taylor*, 2016 WL 3849852, at *7 (D.N.J. July 15, 2016) (dismissing a case pursuant to Rule 12(b)(6) when a five-week gap, standing alone, was too long to support a plausible finding of causation). The District Court should therefore dismiss Plaintiff's

NJLAD retaliation claim, without prejudice, and afford her a chance to amend her pleading to present additional factual allegations in support of that cause of action.

**ii. <u>Plaintiff's Age Discrimination Claim</u>**

Plaintiff alleges that Defendants terminated her based on her age, in violation of the NJLAD (Third Count). (Compl. ¶¶ 30-31, ECF No. 101). Defendants argue that Plaintiff has failed to state a valid age discrimination claim because: (1) Plaintiff has not alleged that Defendants replaced her with a younger employee; and (2) Plaintiff was a member of the same protected class at the time of both her hiring and firing. (Def. Br. at 18-19, ECF No. 6-4).

Defendants base their "replacement" argument on the United States Court of Appeals for the Third Circuit's decision in *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296 (3d Cir. 2004). While the *Monaco* court confirmed that a plaintiff must allege facts demonstrating a bias favoring a younger employee to make out a prima facie case of traditional age discrimination under the NJLAD, *id.* at 303-04, it expressly noted that, where, as here, a plaintiff is terminated as part of a reduction in force, she can meet that requirement by "showing the employer retained someone similarly situated to . . . her sufficiently younger." *Id.* Plaintiff has alleged precisely that: "Ms. Rosely is older than her Co-Head, who was retained". (Compl. ¶ 17, ECF No. 1-1). The Court finds that those allegations are sufficient at the pleadings stage.

Turning to their second argument, Defendants cite *Young v. Hobart W. Grp.*, 385 N.J. Super. 448, 461, 897 A.2d 1063, 1070 (App. Div. 2005) for the concept that "[c]ourts have rejected age discrimination claims when a plaintiff was both hired and fired while a member of the protected age group." In making that statement, however, the Appellate Division was observing decisions from various courts, not setting a standard. Moreover, the Appellate Division did so as one part of a larger discussion regarding the trial court's decision to grant summary judgment in

the defendants' favor – specifically when addressing the plaintiff's failure to demonstrate that the defendant's proffered business reason for her termination was pretextual. *Id.* at 460-61. The other cases Defendants cite in support of this argument similarly involved analyses of whether – on motions for summary judgment made after the benefit of discovery – the plaintiffs had demonstrated that the defendants' explanations for their employment decisions were pretextual. *Malloy v. Intercall, Inc.*, No. 08-cv-01182 (JLL), 2010 WL 5441658, at *12–13 (D.N.J. Dec. 28, 2010); *Thomasian v. New Jersey Inst. of Tech.*, No. 08-cv-2218 (FSH), 2010 WL 1032653, at *5-6 (D.N.J. Mar. 16, 2010) These cases do not support dismissal at the pleadings stage of the case. In any event, even if some "presumption against age discrimination as a motivating factor for termination", Malloy, 2010 WL 5441658, at *12–13, did apply at this early juncture, the Court notes that Plaintiff has alleged that *all* of the employees terminated in Defendants' reduction in force were older than their retained counterparts (to the extent they had such comparators), and that the reduction included *all* Strive employees aged 50 or over. (Compl. ¶¶ 16-17, ECF No. 1-1). Taking Plaintiffs' factual allegations as true, and drawing reasonable inferences based on those allegations, this Court finds that Plaintiff has demonstrated a plausible entitlement to relief on her discrimination claim under the NJLAD. !

**iii. <u>Plaintiff's Claims Against Defendant Ramaswamy</u>**

Plaintiff also seeks to impose individual liability against Defendants Frericks and Ramaswamy for their alleged violations of CEPA (Fourth Count) and the NJLAD (Fifth Count). (Compl. ¶¶ 32-39, ECF No. 1-1). Defendants argue that Plaintiff has failed to plausibly assert such claims against Defendant Ramaswamy, as she has not adequately alleged that he was involved in her termination. (Def. Br. at 20-21, ECF No. 1-1). As for her CEPA claim, Plaintiff alleged that Defendant Ramaswamy was one of the persons who instructed her to violate securities laws,

violated certain laws himself, and that Plaintiff objected to such conduct in discussions with Ramaswamy. (Compl. ¶¶ 3-4, 7-9, ECF No. 1-1). Plaintiff further alleges that Ramaswamy, a co-owner of Defendant Strive, exercised "supervisory authority" over her, (*id.* ¶ 4), and "participated in the decision to terminate [her] employment." (*Id.*). Finally, Plaintiff alleges that, the day after she was fired, Defendant Ramaswamy admitted to other employees that he had a role in her termination. (*Id.* ¶ 19). Taking these allegations as true, and drawing reasonable inferences from them, the Court finds that Plaintiff has plausibly alleged an individual CEPA claim against Defendant Ramaswamy. *E.g.*, *Lippman v. Ethicon, Inc.*, 222 N.J. 362, 380, 119 A.3d 215, 226 (2015) (setting forth the elements a plaintiff must establish to assert a prima facie case under CEPA); *Fasano v. Fed. Rsrv. Bank of New York*, 457 F.3d 274, 289 (3d Cir. 2006) (noting that "CEPA allows for individual employee liability").

Plaintiff has not, however, asserted a plausible claim against Ramaswamy for individual liability under the NJLAD. The New Jersey Supreme Court has clarified that "the plain meaning of the definition of employer in the [NJ]LAD does not include a supervisor. Instead, individual liability of a supervisor for acts of discrimination . . . can only arise through the 'aiding and abetting' mechanism". *Cicchetti v. Morris Cnty. Sheriff's Off.*, 194 N.J. 563, 594, 947 A.2d 626, 645 (2008). Describing the type of activities that might justify such individual liability, the *Cicchetti* court wrote:

> We have held that the words aiding and abetting "require active and purposeful conduct." As a part of our analysis, we cited with approval the language of the Third Circuit predicting that we would so hold, concluding that:
>
> [I]n order to hold an employee liable as an aider or abettor, a plaintiff must show that "'(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the

> defendant must knowingly and substantially assist the principal violation.'"

*Id.* at 594 (quoting *Tarr v. Ciasulli*, 181 N.J. 70, 83-84 (2004) (internal citations omitted). While Plaintiff argues that Defendant Ramaswamy aided and abetted Strive in terminating her in connection with her sexual harassment complaints, (Pl. Br. at 24-25, ECF No. 9), Plaintiff has not alleged that Ramaswamy knew about those complaints. (*Generally* Compl., ECF No. 1-1). While Plaintiff confronted others at Strive regarding the alleged harassment, Ramaswamy was not among them. (*Id.* ¶¶ 11-13). Finally, though Plaintiff also makes policy-based arguments seeking to expand individual liability under the NJLAD, (Pl. Br. at 25-27, ECF No. 9), this Court must follow the clear guidance of the New Jersey Supreme Court on this matter. *Tryp Hotels Worldwide, Inc. v. Sebastian Hotel, LLC*, No. 21-CV-11557(MEF), 2024 WL 1327311, at *9 (D.N.J. Mar. 28, 2024) (when the District Court seeks to resolve questions of New Jersey state law, "'the decisions of the [New Jersey] Supreme Court are the authoritative source[.]'") (quoting *Spence v. Esab Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010)). As Plaintiff has not adequately alleged that Ramaswamy "aided and abetted" in violations of the NJLAD, the District Court should dismiss the Fifth Count as to that defendant.

## III. CONCLUSION

Based on the foregoing, it is on this 24th day of July, 2024,

**RECOMMENDED** that the District Court grant Defendants' motion, (ECF No. 6), in part and deny it in part; and it is further

**RECOMMENDED** that the District Court dismiss the Second Count of the Complaint, in its entirety, *without prejudice*; and it is further

**RECOMMENDED** that the District Court dismiss the Fifth Count of the Complaint, as to Defendant Ramaswamy only, *without prejudice*; and it is further

**RECOMMENDED** that the District Court deny the balance of Defendants' motion; and it is further

**RECOMMENDED** that, for those claims dismissed without prejudice, the District Court afford Plaintiff an opportunity to address the issues discussed herein via amendment.[4]

**s/ Cathy L. Waldor**
**Hon. Cathy L. Waldor**
**United States Magistrate Judge**

Cc: Hon. Julien X. Neals, U.S.D.J.

[4] In accordance with Federal Rule of Civil Procedure 72 and Local Civil Rule 72.1, any objections to this Report and Recommendation shall be filed within fourteen (14) days after service hereof. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.