**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JOYCE ROSELY,

Plaintiff,

v.

STRIVE ASSET MANAGEMENT, LLC, ANSON FRERICKS, and VIVEK RAMASWAMY,

Defendants.

Civil Action No. 23-20772 (JXN)(CF)

**OPINION**

**NEALS**, District Judge

Before the Court are Defendants Strive Asset Management LLC ("Strive"), Anson Fhericks ("Frericks"), and Vivek Ramaswamy's ("Ramaswamy") (collectively, "Defendants") objections (ECF No. 13) to Magistrate Judge Waldor's[1] July 24, 2024 Report and Recommendation ("R&R") (ECF No. 12) recommending the Court: (1) deny Defendants' motion to transfer this case pursuant to 28 U.S.C. § 1404(a); and (2) partially grant Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure[2] 12(b)(6). Defendants timely objected. (ECF No. 13.) The Court has reviewed the R&R, Defendants' objections, and the record, and decides this matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the R&R is **ADOPTED in part.** The motion to transfer (ECF No. 6) is **DENIED**; the motion to dismiss (ECF No. 6) is **GRANTED** as to Counts II, III, and V of the Complaint; and the motion to dismiss (ECF No. 6) is **DENIED** as to Counts I and IV.

---

[1] After Magistrate Judge Waldor retired, this matter was reassigned to Magistrate Judge Fais.

[2] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. Statement of Facts[3]

Because the parties are familiar with this case, the Court recites only the facts necessary to provide context for reviewing the R&R.[4]

In August 2022, Strive hired Plaintiff Joyce Rosely ("Plaintiff") as an Executive Vice President and Co-Head of Institutional Sales and Distribution. (Compl. ¶¶ 1, 5, ECF No. 1-1.) Plaintiff's Employment Agreement with Strive provides:

> This Agreement, for all purposes, will be construed in accordance with the laws of the State of Ohio without regard to conflicts of law principles. Any action or proceeding by either of the parties to enforce this Agreement must be brought only in a state or federal court located in the State of Ohio. The parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

(*See* Defs.' Ex. A ("Agreement") § 11.5, ECF No. 1-2.[5]) Though Strive is based in Ohio, Plaintiff worked from her home in New Jersey. (Compl. ¶¶ 1–2.)

Plaintiff alleges that, "[a]lmost immediately" after starting her job, Ramaswamy and Frericks, Strive's co-founders and co-owners, demanded she "violate applicable securities laws." (*Id.* ¶¶ 3–4, 7–8.) Plaintiff claims she and another employee, Jeff Nye ("Nye"), "repeatedly objected to" the demands, and to Ramaswamy and Frericks' own violations of securities laws. (*Id.* ¶ 9.)

---

[3] In analyzing Defendants' motion to dismiss, the Court takes Plaintiff's well-pled factual allegations as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). But, on a motion to transfer, the Court "may consider facts and evidence outside of the complaint." *Purcell v. Chubb Ltd.*, No. 23-122, 2023 WL 5434418, at *1 (D.N.J. Aug. 23, 2023). Accordingly, where the Court includes facts outside the Complaint to analyze Defendants' motion to transfer, it will so indicate.

[4] For a fuller recitation of the facts, *see* R&R at 2–4, ECF No. 12.

[5] The Complaint does not reference or attach a copy of the Agreement. (*See* Compl.)

In January 2023, Nye allegedly informed Plaintiff that Strive's Chief Operating Officer[6] ("COO") tried to romantically pursue a new Strive employee in "an aggressive manner." (*Id.* ¶ 10.) Plaintiff met with Strive's Head of People Strategy, Laura Brady ("Brady"), to express her concern "that [the COO's] conduct was creating potential legal liability for [] Strive." (*Id.* ¶ 11.) But, according to Plaintiff, neither "Brady nor anyone else acting on behalf of [Strive] did anything to deter [the COO] from pressuring a newly-hired subordinate into a sexual relationship." (*Id.*) Plaintiff claims she confronted Frericks and the COO about the COO's conduct, and both men allegedly told Plaintiff to mind her business. (*Id.* ¶¶ 12–13.)

Three months later, on March 21, 2023, Frericks and Brady fired Plaintiff without notice or warning. (*Id.* ¶ 14.) That same day, Strive fired Nye and two Senior Vice Presidents: John Phillips ("Phillips") and J.P. Towey ("Towey"). (*Id.* ¶ 15.) Plaintiff (fifty-two), Nye (fifty-four), and Phillips (fifty-three) were only Strive employees older than fifty. (*Id.* ¶ 16.) Towey was forty. (*Id.* ¶ 17.) Strive kept Plaintiff's younger Co-Head and Towey's thirty-year-old coworkers. (*Id.*) Plaintiff claims she is thirteen years older than Frericks, her immediate supervisor. (*Id.* ¶ 18.) Apparently, a day later, Ramaswamy told employees Strive "had to" fire Plaintiff, Nye, Phillips, and Towey. (*Id.* ¶ 19.) Ramaswamy is sixteen years younger than Plaintiff. (*Id.* ¶ 20.)

**B. Procedural History**

On August 8, 2023, Plaintiff sued Defendants in New Jersey Superior Court. (*See generally id.*) The Complaint includes claims for (1) retaliation in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et seq.* ("Count I"); (2) retaliation in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12, *et seq.* ("Count II"); (3) age discrimination in violation of NJLAD ("Count III"); (4) individual liability

[6] Ben Pham.

against Frericks and Ramaswamy under CEPA ("Count IV"); and (5) individual liability against Frericks and Ramaswamy under NJLAD ("Count V"). (*See* Compl. ¶¶ 23–39.) Defendants timely removed. (*See* Notice of Removal, ECF No. 1.)

Defendants moved to transfer this matter to the United States District Court for the Southern District of Ohio ("S.D. Ohio") pursuant to 28 U.S.C. § 1404(a) in accordance with the forum selection clause in Plaintiff's Employment Agreement. (*See* Defs.' Moving Br. at 6–15, ECF No. 6-4.) Alternatively, Defendants moved to dismiss the Complaint under Rule 12(b)(6). (*See generally id.* at 15–21.) Defendants argue Plaintiff's retaliation and age discrimination claims fail because Plaintiff did not adequately allege Defendants fired her due to her complaints or her age. (*Id.* at 16–20.) Defendants also contend the Complaint fails to state a claim for individual liability against Ramaswamy because Plaintiff does not identify any facts showing Ramaswamy was involved in her firing. (*Id.* at 20–21.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 9), and Defendants replied (Defs.' Reply Br., ECF No. 10).

On July 24, 2024, Judge Waldor issued a detailed R&R recommending that this Court deny Defendants' motion to transfer and grant the motion to dismiss in part. (*See generally* R&R.) First, Judge Waldor rejected Defendants' argument that the Employment Agreement required transfer to S.D. Ohio. (*See id.* at 4–9.) Applying Ohio law, Judge Waldor concluded the Employment Agreement's forum selection clause is "unambiguously limited to actions 'to enforce [the] Agreement' itself." (*Id.* at 8 (alteration in original) (quoting Agreement § 15.1).) Because Plaintiff did not bring an action to enforce the Employment Agreement, Judge Waldor determined the forum selection clause did not apply. (*Id.*) Thus, Judge Waldor held Defendants did not meet their burden of showing that transfer would be appropriate. (*Id.* at 8–9.)

Turning to Defendants' motion to dismiss, Judge Waldor concluded Plaintiff adequately alleged a CEPA claim. (*Id.* at 10–14.) Judge Waldor acknowledged "a sizable gap between Plaintiff's complaints and Defendants' alleged adverse action," but found "Plaintiff's allegation that Defendants also simultaneously fired another employee who engaged in the same activity sufficiently bolster[ed] her claim." (*Id.* at 13.) Thus, Judge Waldor recommended denying the motion to dismiss Count I.

Unlike Plaintiff's CEPA claim, Judge Waldor found Plaintiff's NJLAD retaliation claim "depends entirely on the temporal connection between her complaint and Defendants' adverse employment action." (*Id.*) But Judge Waldor determined the two-month gap between Plaintiff's complaint and her termination was too long to establish causation by itself. (*Id.* at 13–14.) Because Plaintiff offered no additional facts from which the Court could infer causation, Judge Waldor recommended dismissing Count II without prejudice.

Reviewing Count III, Judge Waldor found Plaintiff adequately alleged an NJLAD age discrimination claim. (*Id.* at 14–15.) Defendants argued Plaintiff failed to state an NJLAD age discrimination claim because (1) she failed to allege the age or responsibilities of her replacement; and (2) Plaintiff was hired and fired within a year. (*Id.*) Judge Waldor rejected both arguments. As to the first argument, Judge Waldor determined Plaintiff needed only allege her replacement was younger—which she did. (*Id.* at 14.) As to the second argument, Judge Waldor noted several courts within this District have granted summary judgment motions where the plaintiff was a member of a protected age group when they were hired and fired; but this was not a summary judgment motion. (*Id.* at 14–15.) Judge Waldor, accordingly, recommended the Court deny the motion to dismiss Count III.

Judge Waldor then addressed Plaintiff's claims for individual liability against Ramaswamy. (*Id.* at 15–17.) Judge Waldor found Plaintiff stated a claim for individual CEPA liability against Ramaswamy because the Complaint alleged Ramaswamy instructed Plaintiff to violate securities laws, violated securities laws himself, had supervisory authority over Plaintiff; and Plaintiff objected to Ramaswamy's conduct in meetings with Ramaswamy. (*Id.* at 15–16.) Yet Judge Waldor concluded Plaintiff failed to adequately allege Ramaswamy aided and abetted NJLAD violations, because it was not clear Ramaswamy knew about Plaintiff's complaints. (*Id.* at 16–17.) Thus, Judge Waldor recommended the Court deny the motion to dismiss Count IV as to Ramaswamy, but grant the motion to dismiss Count V as to Ramaswamy.

Defendants timely objected to the R&R. Defendants argue Judge Waldor erred in (1) reading the Employment Agreement's forum selection clause too narrowly; (2) finding the seven month gap between Plaintiff's complaints and her termination were not fatal to her CEPA claim; (3) concluding that Plaintiff states an NJLAD age discrimination claim despite not alleging a younger similarly situated coworker replaced her; (4) allowing Plaintiff's NJLAD claim to proceed even though Plaintiff was hired and fired in a one-year period; and (5) determining that Plaintiff stated a non-conclusory CEPA claim against Ramaswamy. (*See generally* Defs.' Obj., ECF No. 13.) Plaintiff did not respond to Defendants' objection.

## II. <u>LEGAL STANDARD</u>

When a magistrate judge addresses a "dispositive" motion, such as a motion to dismiss, a magistrate judge submits an R&R to the Court. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(a)(2). The Court may then "accept, reject or modify, in whole or in part," the R&R or "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C); *see also* L. Civ. R. 72.1(c)(2). An R&R does not have the force of law

unless and until the Court enters an order accepting or rejecting it. *United Steelworkers of Am. v. N.J. Zinc Co., Inc.*, 828 F.2d 1001, 1005 (3d Cir. 1987).

The standard of review of a magistrate judge's determination depends upon whether the motion is dispositive. For dispositive motions, the Court reviews *de novo* the portions of the R&R to which a litigant has timely objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2); *see also State Farm Indem. v. Fornaro*, 227 F. Supp. 2d 229, 231 (D.N.J. 2002); *Zinberg v. Wash. Bancorp Inc.*, 138 F.R.D. 397, 401 (D.N.J. 1990). The Court will reverse an R&R on a non-dispositive motion only if the magistrate judge's determination was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). A ruling is clearly erroneous only if the Court has "the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citation omitted). A ruling is not clearly erroneous "simply because [the reviewing court] is convinced that it would have decided the case differently." *Id.* A ruling is contrary to law "only if the magistrate judge misinterpreted or misapplied governing legal principles." *Jones v. PHH Mortg. Corp.*, 814 F. Supp. 3d 531, 533 (D.N.J. 2026).

"A motion to transfer venue is a non-dispositive pretrial matter." *Palomino Master Ltd. v. Credit Suisse Grp. AG*, No. 24-5539, 2025 WL 2621865, at *2 (D.N.J. Sept. 10, 2025). A motion to dismiss is dispositive. *See Grant v. Omni Health Care Sys. of NJ, Inc.*, 427 F. App'x 156, 158 (3d Cir. 2011).

## III. DISCUSSION

As noted above, Defendants object to Judge Waldor's recommendations that the Court deny the motion to transfer and deny the motion to dismiss Plaintiff's claims for (i) CEPA retaliation, (ii) NJLAD age discrimination, and (iii) individual CEPA liability against

Ramaswamy. (*See generally* Defs.' Obj.) The Court addresses Defendants' objections in turn below.

**A. Motion to Transfer**

28 U.S.C. § 1404(a) allows the Court to transfer any civil action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." § 1404(a) seeks "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *In re CityMD Data Privacy Litig.*, No. 24-6972, 2025 WL 2505655, at *2 (D.N.J. Sept. 2, 2025) (citation omitted). The moving party has the "burden of establishing the need for transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

§ 1404(a) motions follow a two-step analysis. *In re CityMD*, 2025 WL 2505655, at *3 (citation omitted). First, the Court considers whether the plaintiff could have brought the action in the transferee district. *Id.* If so, the Court determines whether transfer would be convenient for the parties and witnesses and serve the interests of justice. *Id.* The Court also considers "six private interest and six public interest factors." *Eagle View Techs., Inc. v. GAF Materials, LLC*, 594 F. Supp. 3d 613, 619 (D.N.J. 2022). The six private interest factors are:

> [i] plaintiff's forum preference as manifested in the original choice; [ii] the defendant's preference; [iii] whether the claim arose elsewhere; [iv] the convenience of the parties as indicated by their relative physical and financial condition; [v] the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [vi] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Papa v. IAT Ins. Grp., Inc.*, 822 F. Supp. 3d 465, 471 (D.N.J. 2026) (alterations in original) (quoting *Jumara*, 55 F.3d at 879). The public interest factors are:

> [(i)] the enforceability of the judgment; [(ii)] practical considerations that could make the trial easy, expeditious, or inexpensive; [(iii)] the relative administrative difficulty in the two fora resulting from court congestion; [(iv)] the local interest in

> deciding local controversies at home; [(v)] the public policies of the fora; and [(vi)] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (alterations in original) (quoting *Jumara*, 55 F.3d at 879–80).

Yet where the parties "have contracted in advance to litigate disputes in a particular forum," the Court must enforce the agreement in "all but the most unusual cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 66 (2013). "[A] valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 63. The Court must (1) "give no weight to the forum preferred by 'the party defying the forum-selection clause'"; (2) "deem the private interests to 'weigh entirely in favor of the preselected forum' because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient"; and (3) "proceed to analyze only public interests." *In re Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting *Atl. Marine*, 571 U.S. at 66).

***i. Plaintiff Could Have Brought This Action in Ohio***

Plaintiff could have brought this action in the transferee forum: S.D. Ohio. First, S.D. Ohio would have subject matter jurisdiction under 28 U.S.C. § 1332(a), which allows federal courts to hear lawsuits between completely diverse parties where the amount in controversy exceeds $75,000. Plaintiff is a New Jersey resident; Strive's sole member is an Ohio corporation; Frericks and Ramaswamy are both Ohio residents; and Plaintiff seeks more than $100,000 in damages.

Second, S.D. Ohio would have personal jurisdiction over Defendants. It is well established that "defendants who reside in the forum state will always be subject to the personal jurisdiction of the court." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). All Defendants reside in Ohio. (*See, e.g.*, Notice of Removal ¶¶ 5–7.)

Third, venue would be proper in S.D. Ohio. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

28 U.S.C. § 1391(b)(1). Frericks and Ramaswamy reside in S.D. Ohio, and Strive also resides in Ohio. (*See* Notice of Removal ¶¶ 5–7.)

Having determined that Plaintiff could have brought this action in the transferee district, the Court moves to the § 1404(a) factors.

***ii. This Dispute Falls Outside the Forum Selection Clause***

At the threshold, the Court must consider whether the Agreement's forum selection clause applies to Plaintiff's lawsuit. The Court concludes it does not.

**a. Ohio Law Governs the Forum Selection Clause**

A party can nullify a forum selection clause by showing the legal claims at issue exceed the scope of the clause or that the terms of the clause are ambiguous as applied. *See Grasso Foods, Inc. v. Entex Techs., Inc.*, No. 21-17788, 2022 WL 2046936, at *2 (D.N.J. June 7, 2022); *151 Foods, LLC v. Cummings Atlanta LLC*, No. 19-17093, 2021 WL 4077560, at *3 (D.N.J. Sept. 8, 2021); *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180–81 (3d Cir. 2017). Contract interpretation questions are "quintessentially substantive, rather than procedural." *Collins*, 874 F.3d at 182 (internal quotation marks and citations omitted). And in diversity cases like this one, the Court applies "state contract law to decide interpretation questions." *Id.* Accordingly, state law governs the scope, applicability, and enforceability of the forum selection clause. *See Meridian Consulting I Corp., Inc. v. Eurotec Can. Ltd.*, No. 19-22197, 2021 WL 689132, at *10 (D.N.J. Feb. 22, 2021) (applying state law to determine whether forum selection clause was mandatory or permissive); *Collins*, 874 F.3d at 183 (applying state law to decide whether forum selection encompassed the plaintiff's claims); *Grasso*, 2022 WL 2046936, at *3 ("Whether [a] forum-selection clause is 'ambiguous' is likewise a question of contract interpretation governed by state law.") (citation omitted).

Thus, the Court uses state law to interpret Employment Agreement's forum selection clause. The question is *which* state's law applies. In a diversity action, the Court employs "the choice of law rules of the forum state to determine what law will govern each of the issues of a case." *Gold Lion Steel LLC v. Glob. Merch. Cash, Inc.*, No. 21-10702, 2022 WL 596997, at *3 (D.N.J. Feb. 28, 2022) (quoting *Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008)). New Jersey is the forum state. Generally, "when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice." *Collins*, 874 F.3d at 183–84 (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 130 N.J. 324, 341 (1992)). However, the parties' contractual choice will not govern if:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* at 184 (quoting *Instructional Sys.*, 130 N.J. at 341).

Neither exception applies. *Id.* First, the parties have a substantial relationship to Ohio. Strive principally does business and is headquartered in Ohio, while Frericks and Ramaswamy live there. *Instructional Sys.*, 130 N.J. at 342 (finding a corporation's California headquarters established a substantial relationship to California); *see also Restatement (Second) of Conflict of Laws* § 187, cmt. f (stating that a "substantial relationship" is present where one of the parties' principal place of business is the "state of the chosen law.").

Second, it is not clear how New Jersey has a "materially greater interest" in "the application of its own contract law to the interpretation of the forum selection clauses," or how the application of Ohio contract law "to interpret the scope of the forum selection clauses would offend the

'fundamental policy' of New Jersey." *Collins*, 874 F.3d at 184. The Court, accordingly, uses Ohio law to interpret the forum selection clause.

**b. The Forum Selection Clause Does Not Reach This Lawsuit**

The scope of a forum selection clause "is generally a matter of contract interpretation." *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 309 (6th Cir. 2024). In interpreting contracts, Ohio courts seek "to ascertain the intent of the parties." *Harder Invs., LLC v. Perin-Tyler Fam. Found., LLC*, 2025-Ohio-4706, ¶ 21 (quoting *St. Marys v. Auglaize Cnty. Bd. of Comm'rs*, 2007-Ohio-5026, ¶ 18). The intent of the parties "manifests through the contract's language itself." *Id.* Where the contract language is clear, "a court's role is straightforward: apply the contract's terms as written and refrain from supplementing the agreement with other terms or requirements." *Id.* ¶ 22. If a contract term "is reasonably susceptible to multiple interpretations," the Court may "consider extrinsic evidence to illuminate the parties' intent, including the circumstances surrounding the agreement's formation and the parties' subsequent course of performance." *Id.* But the Court "cannot create ambiguity in a contract where there is none." *Lager v. Miller-Gonzalez*, 2008-Ohio-4838, ¶ 16. Nor will the Court write a better contract than what the parties agreed to. *Acuity, A Mut. Ins. Co. v. Progressive Specialty Ins. Co.*, 2023-Ohio-3780, ¶ 24 ("It is not within our province to rewrite contracts to create judicially preferred outcomes.").

The Employment Agreement provides: "Any action or proceeding by either of the parties *to enforce this Agreement* must be brought only in a state or federal court located in the State of Ohio." (Agreement § 11.5 (emphasis added).) As Judge Waldor found, this forum selection clause plainly applies only to actions brought to *enforce* the Employment Agreement. Enforce means "[t]o compel the observance of." *Enforce*, Oxford Eng. Dictionary, https://doi.org/10.1093/OED/4551995981 (last visited Aug. 21, 2026). The parties could have

used broader language. For instance, they could have agreed to a forum selection clause covering all actions "arising out of or related to the Employment Agreement." They did not. So, the Court holds the parties to the words they bargained for.[7]

As Judge Waldor correctly concluded, this is not an action to compel the observance of the Employment Agreement. It is an action to recover for alleged violations of New Jersey's employment laws. Nothing in the Employment Agreement has any bearing on the Court's analysis of those violations. That Plaintiff had a written employment contract does not convert her routine employment discrimination and retaliation lawsuit into a breach of contract dispute.

In their objections, Defendants cite three Ohio federal cases where courts applied forum selection clauses to claims the plaintiffs argued did not "sound in contract." (*See* Defs.' Objs. at 8–9.) None of those cases compel a different conclusion here. In *Polansky v. Forest River, Inc.*, the forum selection clause covered "legal disputes *relating to* this limited warranty, an alleged breach of warranty, breach of implied [warranties], or representations of any kind." 2023 WL 5486259, at *2 (emphasis added). Likewise, the forum selection clause in *Varsity Gold, Inc. v. Koone* applied to all claims "arising from or related to" the underlying agreement. No. 08-528, 2009 WL 10690075, at *2 (N.D. Ohio Jan. 20, 2009). And *Masco Cabinetry Middlefield, LLC v. Cefla North America, Inc.* did not involve a forum selection clause at all; it applied a choice-of-

[7] Defendants argue Judge Waldor misapplied Ohio law because she read the forum selection clause too narrowly. (*See* Defs.' Objs. at 8–10.) Not so. To be sure, Ohio public policy "supports a broad reading of a forum selection clause." *Polansky v. Forest River, Inc.*, No. 22-4460, 2023 WL 5486259, at *5 (S.D. Ohio Aug. 24, 2023). But the Court may not read a forum selection clause so broadly as to rewrite it. *Acuity*, 2023-Ohio-3780, ¶ 24. This forum selection clause plainly applies only to actions to enforce the Employment Agreement. The Court cannot transform the word "enforce" into "arise out of or relate to."

law provision and interpreted a contractual limitations period in a sales contract. 637 F. App'x 192, 195–200 (6th Cir. 2015).[8]

Next, Defendants argue this is an action to enforce the Employment Agreement because Plaintiff asks the Court "to award her the compensation promised to her in her employment contract." (Defs.' Moving Br. at 10.) This argument is misguided. To start, Plaintiff seeks compensatory damages *generally*, not lost wages *specifically*. (*See* Compl. at 5–9.) The Court cannot use the hazy possibility that a damages calculation *might* incorporate lost wages to transform a CEPA and NJLAD lawsuit into a breach of contract action. Defendants identify no cases where the Court may do so. More to the point, Plaintiff seeks damages allowed by *statute*, not by *contract*. NJLAD and CEPA entitle plaintiffs to recover compensatory damages, including lost wages. *See Chinchilla v. Geodis Am., Inc.*, No. 23-1995, 2024 WL 943424, at *5 (D.N.J. Mar. 5, 2024) ("[B]ack pay, front pay, emotional distress damages, punitive damages, and attorneys' fees . . . are recoverable under both NJLAD and CEPA."). The Employment Agreement does not. (*See* Agreement.) Awarding statutorily allowed damages for NJLAD and CEPA violations is not the same thing as enforcing an employment contract. This Court, accordingly, reaches the same conclusion as Judge Waldor. The Employment Agreement's forum selection clause covers only

---

[8] The cases Defendants cited in their motion to dismiss moving brief are equally unpersuasive. (*See* MTD Moving Br. at 10–13, ECF No. 6-4.) The forum selection clause in *Bohl v. Hauke* bears no resemblance to the one at issue here. 2009-Ohio-150, ¶ 3 ("The laws of the State of Texas shall govern the rights and duties of the parties under this agreement and jurisdiction and venue is fixed in Harris County, Texas."). And *Travelers Property Casualty Co. of America v. Centimark, Corp.* involved a much broader forum selection clause. No. 04-916, 2005 WL 1038842, at *1 (S.D. Ohio May 3, 2005) ("Jurisdiction and venue of *any dispute arising under or pursuant to* the terms of this Warranty shall be vested in courts sitting in Washington County, Pennsylvania." (emphasis added)).

Unlike *Bohl* and *Travelers*, the forum selection clause in *Orthopaedic & Spine Center, LLC v. Henry* is closer to the one at issue here. No. 16-893, 2017 WL 6035234, at *1 (S.D. Ohio Dec. 6, 2017) ("This Agreement shall be interpreted and enforced in accordance with the laws of the State of Ohio. The parties agree that venue will be in the Court of Common Pleas in Franklin County in the state of Ohio."). But in *Henry*, the plaintiffs *expressly* sued to enforce the underlying contract. *See id.* (noting the plaintiffs' complaint "contains six counts: (1) Ohio statutory misappropriation of trade secrets; (2) Ohio common law misappropriation of trade secrets; (3) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (the "CFAA"); (4) breach of contract; (5) breach of the duty of loyalty; and (6) conversion.").

actions to enforce the Employment Agreement. This is not an action to enforce the Employment Agreement.

Because this action falls outside the scope of the forum selection clause, the Court turns to the traditional public and private interest factors. As discussed above, the moving party has the "burden of establishing the need for transfer." *Jumara*, 55 F.3d at 879. Before Judge Waldor, Defendants examined only the public interest factors under the assumption that the forum selection clause applied to the Complaint. (*See* R&R at 9.) Judge Waldor found a discussion of only the public interest factors insufficient for Defendants to meet their burden. (*Id.*) The Court agrees. The public interest factors are "rarely" dispositive. *Atl. Marine*, 571 U.S. at 64. They are not dispositive here, particularly where Defendants' analysis centered on a forum selection clause that does not reach this action. The Court, therefore, **denies** the motion to transfer.

**B. Motion to Dismiss**

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

(quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Defendants argue Judge Waldor should have dismissed Count I (CEPA), Count IV (CEPA liability against Ramaswamy), and Count III (NJLAD Age Discrimination). The Court addresses each claim in turn.

***i. The CEPA Claims (Counts I & IV)***

**a. Count I (Against Strive)**

New Jersey enacted CEPA to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Dzwonar v. McDevitt*, 177 N.J. 451, 461 (2003) (quoting *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 431 (1994)). "The statute thus shields an employee who objects to, or reports, employer conduct that the employee reasonably believes to contravene the legal and ethical standards that govern the employer's activities." *Hitesman v. Bridgeway, Inc.*, 218 N.J. 8, 27 (2014).

To state a CEPA claim, the plaintiff must show:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19–3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Dzwonar*, 177 N.J. at 462 (quoting *Kolb v. Burns*, 320 N.J. Super. 467, 476 (App. Div. 1999)).

Plaintiff alleges she and Nye repeatedly rejected Defendants' directives to violate securities laws, communicated those concerns to their supervisors, and were fired in retaliation seven months later. (Compl. ¶¶ 7–9, 14–15.) Plaintiff, therefore, plausibly alleges (1) she had a reasonable belief Defendants violated securities law and ordered her to do the same; (2) she disclosed to management that Defendants were breaking the law, which is protected under N.J.S.A. 34:19-3(a)(1) and objected, which is protected under N.J.S.A. 34:19-3(c); and (3) she suffered an adverse employment action when Defendants fired her.

Defendants contest only the fourth element—causation—arguing that the seven-month gap between Plaintiff's protected activity and her termination is fatal to Plaintiff's CEPA claim. (Defs.' Objs. at 11–12.) The Court disagrees.

"To determine whether a causal connection exists between a plaintiff's whistle-blower activity and the adverse employment action, courts must consider all circumstances surrounding the employment decision." *Verdone v. Rice & Rice, PC*, 724 F. Supp. 3d 366, 388 (D.N.J. 2024) (citing *Maimone v. City of Atl. City*, 188 N.J. 221, 237 (2006)). "The temporal proximity of employee conduct protected by CEPA and an adverse employment action is one circumstance that may support an inference of a causal connection." *Maimone*, 188 N.J. at 237. "It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997); *see also Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543, 550 (App. Div. 1995) ("[W]e find no case that stands for the proposition that proximity is the only circumstance that justifies an inference of causal connection."). "[C]ausation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." *Kachmar*, 109 F.3d at 178. "When

there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Id.*

Thus, the seven-month gap between Plaintiff's protected conduct and her termination does not render her CEPA claim fatally defective.[9] Taking Plaintiff's well-pled allegations as true and viewing the Complaint in a light most favorable to her (as the Court must), Plaintiff adequately alleges a CEPA violation. According to Plaintiff, Defendants asked her and Nye to break the law; Plaintiff and Nye repeatedly refused to do so and complained to management; and Defendants fired Plaintiff and Nye seven months later. As Judge Waldor found, firing *both* objecting employees is enough to support the inference that Defendants fired Plaintiff *because* she objected.

The Court, accordingly, **denies** Defendants' motion to dismiss Count I.

**b. Count IV (Against Ramaswamy)**

As discussed above, CEPA prohibits "[a]n employer" from taking "any retaliatory action against an employee" for whistle-blowing. N.J.S.A. 34:19-3. "Employer" means "any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." N.J.S.A. 34:19-2(a). Therefore, "CEPA creates individual liability for agents of the employer, including supervisory employees who act with the authorization of the employer." *Palladino ex rel. U.S. v. VNA of S. New Jersey, Inc.*, 68 F. Supp. 2d 455, 474 (D.N.J. 1999). CEPA liability, moreover, extends

[9] Defendants cite five cases where a gap between protected conduct and retaliation defeated the inference of causation. (*See* Defs.' Objs. at 12.) But three of those cases arose at the summary judgment stage. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 109 (3d Cir. 2003); *Reganato v. Appliance Replacement Inc.*, No. 15-6164, 2017 WL 747463, at *1 (D.N.J. Feb. 27, 2017), *aff'd,* 727 F. App'x 40 (3d Cir. 2018); *Escanio v. United Parcel Serv.*, 538 F. App'x 195, 196 (3d Cir. 2013).

The remaining two cases do not stand for the proposition that a time gap *alone* can defeat a CEPA claim. *See Blakney v. City of Philadelphia*, 559 F. App'x 183, 187 (3d Cir. 2014) ("Because Blakney was not entitled to reinstatement, the City's decision not to rehire him does not support an inference of antagonism."); *Taylor v. Lincare, Inc.*, No. 15-6284, 2016 WL 3849852, at *7 (D.N.J. July 15, 2016) (noting that "Plaintiff has alleged no other facts suggesting that Lincare terminated him because of his alleged requests for accommodation.").

"indirect supervisors and co-workers who allegedly participated in the retaliatory scheme." *Cappel v. County of Essex*, No. 22-2226, 2023 WL 8827477, at *5 (D.N.J. Dec. 21, 2023) (citation omitted).

That said, individual CEPA liability "requires personal involvement" from the individual defendant. *Curley v. Mercury Ins. Servs., LLC*, No. 21-12259, 2022 WL 445633, at *4 (D.N.J. Feb. 10, 2022). CEPA liability does not reach an individual defendant "*unless* the plaintiff proves that the defendant took an adverse employment action against him [or her] because of his [or her] whistleblowing." *Bowen v. Parking Auth. of Camden*, No. 00-5765, 2003 WL 22145814, at *23 (D.N.J. Sept. 18, 2003). Even so, courts within this District "have recognized that, prior to discovery, 'a plaintiff cannot be expected to be privy to the inner workings' of the retaliatory actions and decisions individuals made against them, and thus, have allowed plaintiffs to proceed beyond the motion to dismiss stage to discover additional information on the alleged retaliation." *Curley*, 2022 WL 445633, at *5 (quoting *Southward v. Elizabeth Bd. of Educ.*, No. 15-3699, 2017 WL 111924, at *10 (D.N.J. Jan. 11, 2017)).

Defendants argue Plaintiff fails to state a CEPA claim against Ramaswamy individually because "no allegations in the Complaint suggest Mr. Ramaswamy was directly involved in the decision to fire [Plaintiff], much less that he did so for unlawful reasons." (Defs.' Objs. at 21.) The Court disagrees. Plaintiff alleges (1) Ramaswamy "exercised supervisory authority" over her, (Compl. ¶ 4); (2) Ramaswamy demanded Plaintiff and Nye violate securities laws, (*id.* ¶ 7); (3) Plaintiff and Nye "repeatedly objected to the foregoing unlawful conduct in conversations with . . . Ramaswamy," (*id.* ¶ 9); and (4) Ramaswamy "participated in the decision to terminate [P]laintiff's employment" when she refused his demands to break the law, (*id.* ¶ 4). Taking her allegations as true, Plaintiff sufficiently states a CEPA claim against Ramaswamy.

The Court, therefore, **DENIES** Defendants' motion to dismiss Count IV.[10]

***ii. The NJLAD Age Discrimination Claims***

**a. Count III (Against Strive)**

NJLAD prohibits employers from firing employees based on their age. N.J.S.A. 10:5-12(a). To state an NJLAD age discrimination claim, the plaintiff must show "(1) she was a member of a protected group; (2) her job performance met the 'employer's legitimate expectations'; (3) she was terminated; and (4) the employer replaced, or sought to replace, her." *Nini v. Mercer Cnty. Cmty. Coll.*, 406 N.J. Super. 547, 554 (App. Div. 2009) (quoting *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 450 (2005)), *aff'd,* 202 N.J. 98 (2010).

The fourth element requires the plaintiff to show their "former employer retained a sufficiently younger, similarly-situated employee." *Arenas v. L'Oreal USA Prods., Inc.*, 461 F. App'x 131, 134 (3d Cir. 2012); *see also Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 304 (3d Cir. 2004) (holding that, in NJLAD age discrimination cases, courts must "look to the ages of the remaining similarly situated employees to compare them to [the plaintiff]."). "Two employees are similarly situated only if they share in relevant aspects of employment, i.e., are part of the same department or have comparable duties." *Richter v. Duquesne Univ. of the Holy Spirit*, No. 24-3132, 2026 WL 207489, at *2 (3d Cir. Jan. 27, 2026). "A plaintiff's failure to provide details such as the actual or approximate age of individuals hired over them or other facts giving rise to an inference of age discrimination has led to dismissal of NJLAD age-discrimination claims within

[10] Defendants do not object to Count IV to the extent it seeks to impose liability against Frericks. The Court reviews unopposed portions of an R&R for clear error. *See M.C. v. Harnad*, No. 21-19819, 2025 WL 1156637, at *4 (D.N.J. Apr. 21, 2025) (citing *Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006)). The Court finds no clear error in allowing the CEPA claim to go forward against Frericks. As with Ramaswamy, the Complaint alleges Frericks "exercised supervisory authority" over Plaintiff, directed Plaintiff to break securities laws, "and participated in the decision to terminate [P]laintiff's employment when [P]laintiff refused to do so." (Compl. ¶ 3.)

this District." *Blount v. TD Bank, N.A.*, No. 20-18805, 2023 WL 7403603, at *5 (D.N.J. Nov. 9, 2023) (collecting cases).

Defendants argue Plaintiff fails to state a *prima facie* NJLAD age discrimination claim because (1) Plaintiff was hired and fired while she belonged to a protected age group, and (2) Plaintiff does not allege the age of her replacement. The Court takes each argument in turn.

To start, Plaintiff's age when she was hired and fired does not warrant dismissal at this stage. To be sure, "[c]ourts have rejected age discrimination claims when a plaintiff was both hired and fired while a member of the protected age group." *Young v. Hobart W. Grp.*, 385 N.J. Super. 448, 461 (App. Div. 2005). But Defendants have not identified any case within this District granting a motion to dismiss on the basis articulated in *Young*. *See, e.g.*, *Est. of Fajge v. Dick Greenfield Dodge, Inc.*, No. 11-4527, 2012 WL 2339723, at *8 (D.N.J. June 18, 2012) (granting summary judgment); *Malloy v. Intercall, Inc.*, No. 08-1182, 2010 WL 5441658, at *12 (D.N.J. Dec. 28, 2010) (same); *Thomasian v. N.J. Inst. of Tech.*, No. 08-2218, 2010 WL 1032653, at *5 (D.N.J. Mar. 16, 2010) (same). Indeed, the Court would find it inappropriate to grant this motion to dismiss simply because Defendants hired and fired Plaintiff within the same year. As the Third Circuit has noted, when "the hirer and firer are the same and the discharge occurred soon after the plaintiff was hired, the defendant may of course argue to the factfinder that it should not find discrimination. But this is simply evidence like any other and should not be accorded any presumptive value." *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 496 n.6 (3d Cir. 1995). And on a motion to dismiss, the Court must "construe the complaint in the light most favorable" to Plaintiff. *Fowler*, 578 F.3d at 210. Dismissing Count III based solely on Plaintiff's age at the time of her hiring and firing would do the opposite.

But Plaintiff's failure to show she had a similarly situated and sufficiently younger replacement warrants dismissal. To state an NJLAD age discrimination claim, the plaintiff must show their "former employer retained a sufficiently younger, similarly-situated employee." *Arenas*, 461 F. App'x at 134. "A plaintiff's failure to provide details such as the actual or approximate age of individuals hired over them or other facts giving rise to an inference of age discrimination has led to dismissal of NJLAD age-discrimination claims within this District." *Blount*, 2023 WL 7403603, at *5. Here, Plaintiff does not identify the actual or approximate age of her replacement, just that she was "older than her Co-Head, who was retained."[11] (Compl. ¶ 17.) Without more, the Court cannot conclude Plaintiff's replacement was *sufficiently* younger than her. *Monaco*, 359 F.3d at 307; *see also Barker v. United Airlines, Inc.*, No. 23-3065, 2024 WL 378633, at *3 (D.N.J. Feb. 1, 2024) (granting motion to dismiss NJLAD claim where "the age of the person who was hired to replace Plaintiff" was "missing from the Complaint."); *Mayes v. Jersey City Pub. Sch.*, No. 18-3550, 2018 WL 11510997, at *2 (D.N.J. Dec. 18, 2018) (dismissing NJLAD claim where "Plaintiff does not plead the actual ages or approximate ages of the individuals hired over her."). Nor does Plaintiff identify the "relevant aspects of" her Co-Head's employment, such that the Court could conclude Plaintiff and her replacement were similarly situated. *Richter*, 2026 WL 207489, at *2. The Court, therefore, finds Plaintiff does not state an NJLAD age discrimination claim upon which relief can be granted.

Accordingly, Count III is **DISMISSED** ***without prejudice***.

**b. Count V (Against Frericks and Ramaswamy)**

The Court reviews unopposed portions of an R&R for clear error. *See M.C.*, 2025 WL 1156637, at *4. Clear error means (1) the Court has "the definite and firm conviction that a mistake

[11] The Court assumes, for the sake of this analysis, that Plaintiff's co-head was her replacement.

has been committed." *Anderson*, 470 U.S. at 573; or (2) "the magistrate judge misinterpreted or misapplied governing legal principles," *Jones*, 814 F. Supp. 3d at 533.

Count V seeks to impose NJLAD liability on Frericks and Ramaswamy individually. (*See* Compl. ¶¶ 35–39.) Judge Waldor recommended the Court dismiss Count V only as to Ramaswamy. (R&R at 16–17.) The parties do not object to this recommendation.

"Unlike federal law, NJLAD does impose individual liability, albeit through the awkward route of 'aiding and abetting.'" *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015). NJLAD makes it unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act." N.J.S.A. 10:5-12(e). An individual "can aid and abet, not only the conduct of another person, but that person's own conduct." *DeSantis*, 103 F. Supp. 3d at 591. To hold an employee liable for aiding and abetting an NJLAD violation, the plaintiff must show:

> (1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation.

*Id.* (citing *Cicchetti v. Morris Cnty. Sheriff's Off.*, 194 N.J. 563, 594 (2008)). But "[a]n individual cannot be held liable for aiding and abetting unless there is an underlying violation of the NJLAD." *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 431 F. Supp. 3d 488, 514 (D.N.J. 2019) (citing *Monaco*, 359 F.3d at 307 n.15).

As discussed above, the Court concludes Plaintiff fails to state an NJLAD discrimination claim. And the Court, having carefully reviewed the R&R, finds no clear error in Judge Waldor's recommendation to dismiss the Complaint's NJLAD retaliation claim. Because the Court dismisses both of Plaintiff's underlying NJLAD claims, Plaintiff cannot state an NJLAD aiding-or-abetting claim. Allowing an aiding-or-abetting claim to proceed without an underlying NJLAD

violation would misapply the law. *See generally id.* The Court, therefore, must part company with the R&R as to Count V.

Accordingly, Count V is **DISMISSED** ***without prejudice***.

## IV. CONCLUSION

For the reasons stated above, the R&R is **ADOPTED in part**. Defendants' motion to transfer (ECF No. 6) is **DENIED**. The motion to dismiss (ECF No. 6) is **GRANTED** as to Count II (NJLAD Retaliation); Count III (NJLAD Age Discrimination); and Count V (NJLAD Individual Liability), which are **DISMISSED** ***without prejudice***. The motion to dismiss (ECF No. 6) is **DENIED** as to Count I (CEPA) and Count IV (CEPA Individual Liability). An appropriate Order accompanies this Opinion.

**DATED: 8/25/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**